53 So.2d 882

**DEPARTMENT OF INDUSTRIAL RELA-
TIONS v. SCOTT.**

**3 Div. 929.**

Court of Appeals of Alabama.

Aug. 21, 1951.

J. Eugene Foster and O. J. Goodwyn,
Montgomery, for appellant.

Lee M. Otts, Brewton, for appellee.

HARWOOD, Judge.

The claimant for unemployment compensation is the appellee here. For convenience he will hereinafter be referred to as the claimant.

Claimant's petition for unemployment compensation was denied by the Appeals Referee and by the Board of Appeals in the administrative processing of his claim for unemployment compensation in the Department of Industrial Relations.

From the adverse ruling on his claim by the Board of Appeals the claimant appealed to the Circuit Court of Escambia County.

After hearing that court entered a judgment in favor of the claimant, and from that judgment the Director of the Department of Industrial Relations, as an interested party, perfected his appeal to this court.

In his own behalf the claimant testified in the court below that he is twenty-two years of age and a high school graduate.

In August 1948 he entered into a contract of employment with the Orkin Exterminating Company. Under the terms of this contract he was to do general exterminating work and sell contracts. He was to receive a salary of $135 per month, and $35 per month for the use of his automobile, and was allowed 50¢ per meal while out of Montgomery on route work, and $2 per night for a room.

It being necessary for the prospective employee to have a car in order to qualify for the job, the claimant purchased one on installment, his payments on the automobile being $52.50 per month.

Claimant testified that he travelled about 1,500 miles per month, and that the actual expenses for thus operating his automobile came to $40 per month; that his meals would average 70¢ per meal, and that he ate an aveage of 55 meals per month on the road; and that he averaged spending 18 nights per month out of Montgomery, and that his lodging cost him $3 per night.

In addition claimant maintained a room in Montgemery which he and his wife occupied.

On cross examination, in itemizing his mileage per month by estimation, claimant

could only account for around 900 miles per month which he travelled. We doubt that claimant's own estimate did him any injustice in this calculation. He further testified that he "didn't look too much" for a room while on his route that could be rented for $2 per night, as he wanted to stay in a hotel where his room would have a bath.

Appellant admitted that his employer had lived up to every term of the employment contract, and that during his employment he had received a raise of $5 per month.

Prior to his employment with the exterminating company claimant had "picked cotton, butchered and done some plumbing work."

There is some testimony by the claimant that he was told by the "Veterans agent" that he would probably make $200 per month on the job with the exterminating company. However, the actual terms of the contract of employment entered into between the claimant and the exterminating company are undisputed, and this agreement provided for the salary and expense allowances set out above.

In April 1949 the claimant left his job with the exterminating company. At this time he was receiving around $230 per month from the company for salary and allowances. When he quit his job he "had in mind" going in the plumbing business with his brother, we gather in Jay, Florida. He did not write his brother, and found out later that his brother had made other arrangements.

While in Jay, Florida, the claimant wrote a letter to Mr. A. B. Hollingworth, manager of the exterminating company, which letter contains the following paragraph: "I signed up for unemployment down here. I guess they will get in touch with you to find out the reason I left up there. The only way that you can draw this is to have been laid off because of not enough work. I would appreciate it if you would take care of this for me."

Section 214, subd. B, Title 26, Code of Alabama 1940, as amended, provides that:

"An individual shall be disqualified (for benefits) for total or partial unemployment:

&ast; &ast; &ast; &ast; &ast; &ast;

"If he has left his employment voluntarily without good cause connected with such work."

The picture disclosed by this record is that of a young man, who after having entered into a contract of employment, the terms of which were admittedly met by the employer in every respect, finds that he is unable to live on the compensation earned under the contract. He thereupon quits his employment.

The claimant was fully aware of the compensation he was to be paid when he entered into the employment contract. No changes or increased burdens were imposed by the employer after the contract was executed.

His quitting work did not result from good cause connected with his work, but rather from the unrelated factor that he was dissatisfied with the earnings produced by contract of employment which he had entered into with his eyes open.

This claimant was therefore, even under his own testimony, disqualified from receiving unemployment benefits. We think he fully realized this, judging by the contents of his letter to the manager of the exterminating company. The manager could not "take care" of him, for the fact was that claimant was never laid off because of "not enough work."

The lower court, in our opinion, has erroneously applied the governing legal principles to the developed facts of this case. An order of reversal must therefore be entered.

Reversed and remanded.