In the Matter of ARTHUR SELLERS, Respondent. J. W. MAYS, INC., Appellant; MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent.

Third Department, May 23, 1961.

*Kaye, Scholer, Fierman, Hays & Handler (Milton Kunen* of counsel), for appellant.

*Howard A. Levine* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General (Harold F. Lee* of counsel), for Industrial Commissioner, respondent.

Coon, J. Claimant initially began work as a porter for the employer on August 27, 1957, at a wage of $52 for a 48-hour week. On January 6, 1959, when his wage was $55 for a 48-hour week, claimant voluntarily quit because he was dissatisfied with the amount of his pay.

Assuming, *arguendo,* that claimant's wages were substantially less than those prevailing for similar work in the locality, the question presented is whether an employee may take a job initially at such substandard wages and then by a voluntary quit qualify for unemployment benefits. The question has never been decided by the courts, hence there is no judicial precedent which is controlling or which is of much aid in solution. The question has apparently proved a troublesome one for the Unemployment Insurance Appeal Board which has decided it both ways at different periods of time. (Cf. Appeal Board Decisions 49,266–55, dated April 15, 1955; 54,433–56, dated May 11, 1956; 55,350–56, dated June 15, 1956; 55,898–56, dated July 13, 1956; 56,363–56, dated Aug. 31, 1956; 55,889–56, dated Sept. 14, 1956; 61,471–57, dated Jan. 24, 1958, and 65,572–58, dated Sept. 12, 1958.)

We do not think a claimant, under the circumstances present here, should qualify, without restriction, for benefits. First, the general intent, purposes and objectives of the Unemployment Insurance Law would not seem to include a situation such as this. The primary purpose of the law is to ease the hardship of involuntary unemployment due to economic conditions or other conditions beyond the control of the employee. It was not

intended as a substitute for a minimum wage law. (Here claimant never received less than the legal minimum wage.) It was not intended to regulate wages—it was intended as a substitute for the complete loss of wages forced upon an employee. (Labor Law, §§ 501, 522.) Secondly, the Unemployment Insurance Law (Labor Law, art. 18) expressly disqualifies claimant. Pursuant to section 593 of the Labor Law, claimant is not entitled to benefits after a voluntary separation from employment solely because of dissatisfaction with wages, even if they were less than the prevailing wage, unless he comes within the literal terms of an exception contained in section 593 (subd. 1, par. [b] [now subd. 1, par. (a)]) the pertinent part of which read: '' voluntary separation from employment shall not in itself disqualify a claimant if circumstances have developed in the course of such employment that would have justified the claimant in refusing such employment in the first instance.'' (L. 1958, ch. 387, § 15.)

No circumstances whatever '' developed in the course of such employment '' which would have justified claimant in refusing the employment in the first place. His wages were not reduced during the employment, they were raised. If we assume his wages were substandard when he quit, they were substandard when he took the job. Nothing '' developed in the course of such employment '' which would justify a refusal of the job in the first instance, and we may not ignore those plain words in the statute. To hold otherwise would permit an employee, fully aware of the wage to be paid, to take a job and use that job for the necessary qualifying period of employment, and then, for no reason not present in the first instance, voluntarily quit and receive unemployment insurance benefits. Such an interpretation is unrealistic and entirely beyond the real purpose of the statute.

Moreover, we do not think the record in this case sustains a finding that claimant was receiving less than '' prevailing '' wages for his type of work. There is evidence in the record that the wages paid claimant were commensurate with wages paid for similar work in the locality, and that the State Employment Service had referred applicants to jobs as porter at $1 per hour. However, the board relied upon a survey made by the United States Department of Labor, Bureau of Labor Statistics, dated April, 1958, which found that the median salary of male janitors, porters and cleaners in the retail trades in the New York City area was $1.36 per hour. Claimant's wage was within the range of wages found in the survey (which varied widely), but was somewhat less than the '' median ''

wage. The difficulty is that " median " wage, the wage of the middle worker, is not the same thing as " prevailing " wage. A wage must not be said to be " prevailing " when substantially one half of the workers are receiving less and substantially one half are receiving more. The statute nowhere uses the word " median ". In order to be a prevailing wage it must appear that at least a majority of workers in similar employment are receiving approximately that wage.

The survey relied upon necessarily included widely varied types of establishments and employers and included employees of widely varied abilities, experience and job performance. To arbitrarily take the middle worker's wages as the wages " prevailing " for the particular type of work performed by claimant finds no sanction in the statute, in judicial precedent, or in common sense.

The decision should be reversed, with costs to the appellant against the respondent.

BERGAN, P. J., GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Decision reversed, with costs to the appellant against the respondent.