[S.F. No. 23583. Aug. 9, 1977.]

TOMMIE ANN HILDEBRAND, Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD et al.,
Defendants and Respondents;
CEL-A-PAK, INC., Real Party in Interest and Appellant.

**COUNSEL**

Richard H. Foster for Real Party in Interest and Appellant.

Richard A. Gonzales, Marian Johnston, Jaramillo, Kirkpatrick, McCarthy, Novoson & Turner, Dudley, Jaramillo, Kirkpatrick, McCarthy, Novoson & Turner, Donald N. Hubbard, Luis C. Jaramillo and Alberto J. Saldamando for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

**OPINION**

**RICHARDSON, J.**—Section 1256 of the Unemployment Insurance Code (all statutory references are to that code unless otherwise indicated) provides in pertinent part that "[a]n individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause . . . ." In the matter before us defendant Unemployment Insurance Appeals Board (board) denied plaintiff's application for unemployment benefits on the ground

that she left her last employment "voluntarily without good cause" within the meaning of the section. Plaintiff then sought judicial review of the board's action through a petition for administrative mandamus (Code Civ. Proc., § 1094.5), contending that since her employment was terminated by reason of her bona fide religious objections to working on Saturdays, denial of benefits was improper as an unconstitutional interference with her freedom of religion. The trial court agreed with plaintiff and ordered the board to grant her application.

Plaintiff's employer, real party in interest Cel-A-Pak, Inc., appeals. (An employer, such as Cel-A-Pak, has a direct interest in the unemployment compensation benefits paid to former employees since such benefits are charged against the employer's account which is fed by the employer's contributions (§ 1026).) ▮ We will conclude that plaintiff properly was denied unemployment benefits because she had accepted employment with Cel-A-Pak with full knowledge of the Saturday work requirement. When she subsequently refused to perform such work, accordingly, she must be deemed to have left work voluntarily without good cause.

Plaintiff was first employed by Cel-A-Pak in 1966 as a trimmer working at a vegetable packing plant in Salinas. Her employment was seasonal, commencing in April and extending through the following January. Cel-A-Pak employees customarily worked a six-day week from Monday through Saturday, and occasionally on Sundays when the condition and volume of the vegetables so required.

In 1970 plaintiff became a member of the Worldwide Church of God, one tenet of which prohibited working on a Saturday which is recognized by the church members as a Sabbath day. At this time plaintiff discussed her religious beliefs with her employer, and she was excused from Saturday work during the entire 1970 and 1971 seasons. Apparently, some coworkers complained of plaintiff's "favored" treatment, and prior to the 1972 season Cel-A-Pak advised her that henceforth she, along with all the other employees, would be required to perform Saturday work. Plaintiff agreed to do so and did work each Saturday during the 1972 season.

At the commencement of the 1973 season, Cel-A-Pak posted a notice to all of its employees, stating that "Because of unpredictable weather conditions and the irratic [sic] way in which cauliflower matures, it is necessary for the company to require its employees to work six days a

week and occasionally even on Sundays and holidays. Your employer cannot control mother nature and must maintain its quality standards by harvesting and packing on all days required to by this very perisable [*sic*] crop." Plaintiff informed her superior that she no longer could work on Saturdays, but she was told that she would not be excused from doing so. Following this discussion, plaintiff worked for three days (none of them a Saturday), became ill and took a 60-day sick leave. She returned on June 11 or 12 and was told that the plant would be operating on Saturday, June 16. Plaintiff informed her supervisor that she would be in church on that day and, when she failed to report for work, Cel-A-Pak replaced her.

Following an administrative hearing, the referee concluded that plaintiff had left Cel-A-Pak voluntarily without good cause, finding that ". . . the claimant accepted employment in 1973, as well as in 1972, knowing that a condition of the employment required her to work six and perhaps seven days a week . . . . [T]he claimant herein exercised her freedom of choice in accepting a call to work for the 1973-1974 season, being fully aware of the conditions of her employment. She should not now in good faith be permitted to raise her religious convictions as good cause for leaving a job she knew, or should have known, she could not fulfill." The board adopted the foregoing findings and conclusions.

The trial court, on the other hand, reviewed the administrative record and concluded that the denial of unemployment benefits to plaintiff violated those principles announced by the United States Supreme Court in *Sherbert* v. *Verner* (1963) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790]. The trial court found that plaintiff's religious beliefs were bona fide, and concluded that the state could not force plaintiff, in the court's language, "to choose between following the precepts of her religion and forfeiting benefits on the one hand, and abandoning one of the precepts of her religion and work on Saturday on the other hand."

Our analysis of *Sherbert* v. *Verner, supra,* however, leads us to a contrary conclusion. In *Sherbert,* an applicant for unemployment benefits refused, on religious grounds, to accept employment with firms which required Saturday work. Under the applicable South Carolina law, a claimant was ineligible for such benefits if he or she had failed without good cause to accept available suitable work, and the state agency denied benefits on that basis. The high court reversed, holding that the state's ineligibility rule forced the claimant to choose between "following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to

accept work, on the other hand." (374 U.S. at p. 404 [10 L.Ed.2d at p. 970].) The court emphasized that since the state's "suitable work" rule had the effect, under the circumstances of *Sherbert,* of abridging the free exercise of religious beliefs, that rule was invalid unless supported by a compelling state interest. The state's asserted interest in discouraging fraudulent claims for unemployment benefits was held not "compelling."

*Sherbert* is distinguishable from the present case. In *Sherbert* the high court examined the circumstances under which a prospective employee refused without good cause "to accept available suitable work." Although California imposes a similar "suitable work" requirement upon claimants (§ 1257), the legality of that statute is not before us. Instead, measuring the constitutionality of section 1256, we must determine whether plaintiff, having initially accepted employment, thereafter left work "voluntarily without good cause." ■ The public policy underlying section 1256 has been recognized both statutorily and judicially. By denying unemployment benefits to one who has voluntarily terminated employment without good cause, the state promotes a valid purpose in assuring that unemployment benefits are reserved "for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum." (§ 100; see *Zorrero* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434, 439 [120 Cal.Rptr. 855].)

■ Unlike the situation in *Sherbert,* the state in the matter before us has not forced plaintiff to choose between her religious principles and her financial needs, as a condition to receipt of unemployment benefits. Under *Sherbert,* plaintiff clearly would have been permitted to refuse employment with Cel-A-Pak without risking any loss of unemployment benefits for she would not have rejected "available suitable work." However, plaintiff acceded to Cel-A-Pak's insistence upon Saturday work, served the entire 1972 season on that basis, and commenced the 1973 season knowing of Cel-A-Pak's continued policy requiring Saturday work. The conclusion is inescapable that, in doing so, plaintiff voluntarily assumed employment which she knew would conflict with her religious principles, and thereafter voluntarily quit her employment when the conflict proved unavoidable.

We emphasize the critical difference in the two cases. As illustrated by, and rejected in, *Sherbert* the condition of work imposed upon the initial employment required an impermissible sacrifice of conscience. In the matter before us, the condition was knowingly and voluntarily accepted,

work commenced, and a change of mind and heart thereafter ensued, doubtless motivated by the very deepest and most sincere of impulses.

Although there are no California cases directly on point, cases from states having comparable statutory provisions have held uniformly that one who knowingly accepts employment involving a condition which subsequently proves unsatisfactory cannot thereafter claim "good cause" for voluntarily terminating that employment because of a later unwillingness to continue to meet the condition. (See *Department of Industrial Relations* v. *Scott* (1951) 36 Ala.App. 184 [53 So.2d 882, 884]; *Oliver* v. *Creamer Heating & Appliance* (1966) 91 Idaho 312 [420 P.2d 795, 799]; *Friloux* v. *Administrator, Div. of Emp. Sec. of D. of L.* (La. 1962) 136 So.2d 99, 101; *In re Sellers* (1961) 13 App.Div.2d 204 [215 N.Y.S.2d 385, 387]; *Lirakis* v. *Unemployment Compensation Bd. of Review* (1961) 194 Pa.Super. 342 [168 A.2d 647, 648].) ■ The applicable principles were well expressed in *Friloux*, as follows: "To constitute good cause the circumstances attending the final termination of the employment must be compelling and necessitous and *not merely because the applicant is dissatisfied with conditions that he well knew existed at the time he accepted the employment.*" (P. 101, italics added.) In other words, an employee cannot ". . . take a job and use that job for the necessary qualifying period of employment, and then, *for no reason not present in the first instance,* voluntarily quit and receive unemployment insurance benefits." (*In re Sellers, supra,* 215 N.Y.S.2d at p. 387, italics added.)

■ While conceding that the foregoing cases do not involve termination of employment for religious reasons, we conclude that the underlying rationale of those cases is equally persuasive here within a different context. In *Stimpel* v. *State Personnel Bd.* (1970) 6 Cal.App.3d 206, 209-210 [85 Cal.Rptr. 797], the issue was the propriety of the absence from work of a state civil service employee because of religious scruples against Saturday employment. The appellate court observed: "[I]f a person has religious scruples which conflict with the requirements of a particular job . . . he should not accept employment or, having accepted, he should not be heard to complain if he is discharged for failing to fulfill his duties." We conclude that the foregoing principle has similar application to, and force in, the present case within the private sector. After plaintiff voluntarily accepted employment, knowing that the Saturday work condition conflicted with her religion, she may not thereafter reject the condition, suffer discharge, and receive unemployment benefits charged against the employer's reserve account claiming that she left work with good cause.

■ In conclusion, we note that section 1256.2, effective January 1, 1976, provides in pertinent part that "An individual who terminates his employment shall not be deemed to have left his most recent work without good cause if his employer operated so as to deprive him of equal employment opportunities because of that individual's . . . religious creed, . . . except that this section shall not apply: [¶] (a) To a deprivation based upon a bona fide occupational qualification . . . ." It has been recently suggested that section 1256.2 "can only be regarded as declaratory of existing rather than new law." (*Prescod* v. *Unemployment Ins. Appeals Bd.* (1976) 57 Cal.App.3d 29, 41, fn. 19 [129 Cal.Rptr. 540].) The parties herein have not discussed the application of section 1256.2 to the present controversy. Assuming, however, that the principles underlying the section applied to a case arising prior to its enactment, nevertheless it seems apparent that the section would not avail a person such as plaintiff who voluntarily and knowingly accepted employment in conflict with his or her religious tenets. Furthermore, it is certainly arguable that Cel-A-Pak's requirement of Saturday work was a "bona fide occupational qualification" under subdivision (a) of section 1256.2, since that requirement was evidently dictated by the perishable nature of Cel-A-Pak's crop. (Although the question of Cel-A-Pak's compliance with the Civil Rights Act of 1964 is not before us, the United States Supreme Court in *Trans World Airlines, Inc.* v. *Hardison* (1977) — U.S. —, — [53 L.Ed.2d 113, 131, 97 S.Ct. 2264], recently held that employers are not required by the act's provisions either to incur more than de minimis additional costs in attempting to accommodate the religious preferences of their employees, or to discriminate against some employees in order to enable others to observe a Saturday sabbath.)

In view of our holding herein, we need not consider Cel-A-Pak's further contention that the payment of unemployment benefits to plaintiff under the circumstances in this case would amount to a religious preference prohibited by the constitutional restraint against the establishment of religion. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 4.)

The judgment is reversed.

Tobriner, Acting C. J., Clark, J., Sullivan, J.,* Taylor, J.,† and Sims, J.,† concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.

**MOSK, J.**—I dissent.

Plaintiff was first employed seasonally by the real party in interest, the employer, in 1966. She worked Saturdays as required. Her services were at all times "very satisfactory." In 1970 she became converted to the Worldwide Church of God, which prohibits work from sunset Friday until sundown Saturday and recognizes Saturday as the Sabbath, a day for religious services. Thereafter, during the 1970 and 1971 seasons plaintiff was excused from Saturday work in order to attend her religious obligations.

Prior to the 1972 season the employer advised plaintiff she would be required to perform Saturday duties, and she complied. Contrary to the implication of voluntariness in the fact recitation of the majority, however, plaintiff did not "agree[d] to do so" (*ante,* p. 768). The trial court in its memorandum opinion found that she "did so under protest" and that she complained to her union about the Saturday work requirement. She also contacted the state Fair Employment Practices Commission, to no avail.

Plaintiff refused to work on Saturdays in 1973. Thus we have before us circumstances in which an employee is unable to work on her Sabbath because of religious conviction, adheres faithfully to her beliefs in 1970, 1971 and 1973, but deviates "under protest" during the 1972 season. The majority elevate this aberrant interruption of religious principle to "good cause" for the termination of her employment. I do not agree.

An inference is inescapable from the majority opinion that plaintiff's Saturday work in 1972 significantly reflects upon the sincerity of her religious convictions. My learned colleagues give inadequate considera-tion to factual finding number 5 of the trial court: "Petitioner's religious beliefs are genuinely held. There is no substantial evidence in the record to support respondents' [California Unemployment Insurance Appeals Board and California Employment Development Department] finding that petitioner's religious beliefs are not bona fide." Under accepted principles of appellate review, that factual determination is binding upon us.

Therefore this case is controlled by *Sherbert* v. *Verner* (1963) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790]. Here, as in *Sherbert,* "not only is it apparent that appellant's declared ineligibility for benefits derives solely from the practice of her religion, but the pressure upon her to forego that

practice is unmistakable. The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship." (*Id.,* p. 404.)

This case is also comparable to *Montgomery* v. *Board of Retirement* (1973) 33 Cal.App.3d 447 [109 Cal.Rptr. 181] (hg. den.). The petitioner there claimed disability retirement benefits; the county retirement board established that her disability could be eliminated by surgery, which petitioner refused to undergo because of religious faith in divine healing. The court held that "When considerations of conscience grounded upon religious beliefs are involved, the state interest in preserving health pales into insignificance." The denial of benefits was reversed.

Similarly in *Syrek* v. *California Unemployment Insurance Appeals Board* (1960) 54 Cal.2d 519 [7 Cal.Rptr. 97, 354 P.2d 625], this court reversed a denial of unemployment insurance benefits to an otherwise qualified applicant who maintained a conscientious objection to the then required loyalty oath. *Stimpel* v. *State Personnel Bd.* (1970) 6 Cal.App.3d 206 [85 Cal.Rptr. 797], upon which the state places reliance, is distinguishable. There the discharged employee sought reinstatement to employment in which Saturday work was necessary; he could, of course, seek other jobs more compatible with his religious beliefs. Here the plaintiff is not seeking reinstatement, but unemployment compensation because she is presently unemployed.

Though I would still have reservations, it might be arguably possible to justify the theory adopted by the majority in circumstances of one continuous employment relationship. Here, however, we have an atypical job structure. For all practical purposes each season constitutes a separate employment period. Seasonal conditions differ as the crop varies, and as a result working requirements are altered. Thus in the 1970 and 1971 seasons the employer was able to accommodate the plaintiff's declination to work on Saturdays. The 1972 season apparently provided additional burdens and there were more onerous conditions of employment imposed. As indicated above, for that individual employment period, the plaintiff sacrificed her religious beliefs and worked Saturdays "under protest."

When the next distinct employment season arrived, 1973, and the employer imposed a Saturday working requirement, the plaintiff refused to accept the employment condition. That she did work several days—none of them a Saturday—does not dilute her steadfast refusal, because of religious scruples, to accept the employment as tendered by the employer. Whether between the 1972 and 1973 employment periods her religious dedication had become revived, strengthened or more fervent is a matter of speculation;[1] the relevant factor is the trial court's finding that her beliefs were bona fide. (*People* v. *Woody* (1964) 61 Cal.2d 716, 726 [40 Cal.Rptr. 69, 394 P.2d 813].)

Refusal to accept employment under conditions at odds with religious conviction was precisely what the Supreme Court upheld in *Sherbert*. That the plaintiff may have permitted economic necessity to conquer her conscience in a previous period of employment seems a slender rationale upon which to justify governmental compulsion to subordinate religious convictions in connection with the current seasonal job.

In effect, the state appears to decree that plaintiff now forfeits her right to adhere to religious practices without penalty because of a limited waiver in the past. As the majority concede, there is no authority upholding this novel justification for governmental intrusion into religious liberty. Indeed, the theory not only clearly offends the *Sherbert* principle, it is contrary to the landmark case of *Speiser* v. *Randall* (1958) 357 U.S. 513 [2 L.Ed.2d 1460, 78 S.Ct. 1332], which emphasized that conditions upon public benefits cannot be sustained if they so operate, whatever their purpose, to inhibit or deter the exercise of First Amendment freedoms.

The United States has been unique among nations of the world in its vindication of the right of individuality in religion. The practices of

---

[1] The testimony suggests plaintiff's conscience finally prevailed over economic necessity:

"REFEREE: Did you feel you were violating the tenets of your faith by [working Saturdays during 1972]?

"MRS. HILDEBRAND: Yes, yes, and I'm sorry about it. I guess we all break God's commandments.

"REFEREE: Do [*sic*] you have some sort of conversion there in '73 or so that changed your mind?

"MRS. HILDEBRAND: I just made up my mind that I was going to keep it [the Sabbath].

"REFEREE: No special reason, hm?

"MRS. HILDEBRAND: Well, of course my conscience hurt me.

"REFEREE: Conscience?

"MRS. HILDEBRAND: Yes."

religion, under our Constitution, are attributes of individual men and women, acting alone or in concert, not of the state or by the leave of the state. To preserve that principle not only should we tolerate no alliance between church and state, we must also be vigilant to prevent overt hostility between church and state. The only acceptable role of the state is to be totally benign in its attitude toward religion and to thus preserve "hospitality to religious diversity" (*Trans World Airlines, Inc.* v. *Hardison* (1977) — U.S. —, — [53 L.Ed.2d 113, 139, 97 S.Ct. 2264], Marshall, J., dissenting).

The denial of benefits which are available to others because of this plaintiff's religious practices constitutes overt hostility to religion and should not be upheld. I would affirm the judgment of the trial court.

The petition of the plaintiff and respondent for a rehearing was denied September 15, 1977. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.