■ In the Matter of the Claim of ROBERT A. HORTON, Respondent. MOLECULAR MAINTENANCE, INC., Appellant. LILLIAN ROBERTS, as Commissioner of Labor, Respondent. — Appeal from a decision of the Unemployment Insurance Appeal Board, filed August 18, 1982, which ruled that claimant was entitled to receive benefits. The employer, Molecular Maintenance, Inc. (corporation), markets industrial repair products and recruits sales representatives to market its merchandise through the use of newspaper advertising. Claimant

responded to one such ad and was selected as a salesman in June, 1980. As such, claimant attended a three-day training seminar and signed a contract which authorized him to sell the corporation's products in assigned territories. He was supplied with audio-visual equipment, tapes, pamphlets and advertising materials. He was also given sales leads. Claimant was prohibited from changing the sales terms set in his contract and was also prohibited from handling competitive products. Claimant was subject to termination without notice and was paid solely upon a commission basis. In November, 1980, claimant resigned his position with the corporation. Claimant thereafter applied for unemployment benefits and was initially ruled eligible for benefits without disqualifying conditions. The corporation protested this determination, asserting, *inter alia,* that claimant was an independent contractor and, in any event, had voluntarily left his employment without good cause. The administrative law judge found that claimant was an independent contractor and, therefore, not entitled to benefits. The Commissioner of Labor appealed to the board and, after the matter was remanded for further hearings, the board reversed the administrative law judge. Claimant was thus ruled eligible for benefits without disqualifying conditions. In pertinent part, the board found that claimant was an employee and that he had good cause to leave his employment. This appeal by the corporation ensued. The first issue raised on appeal is whether the record contains substantial evidence to support the determination of the board that the relationship between claimant and the corporation was that of employee-employer. We find that it does. It is now settled that the determination that "an 'employer-employee' relationship exists must rest upon evidence that [the corporation] exercises control over the results produced by its salespersons or the means used to achieve the results" (*Matter of 12 Cornelia St. [Ross],* 56 NY2d 895, 897). In this regard, claimant was trained by the corporation, traveled with a manager on numerous occasions, was assigned a specific sales area and was supplied with various materials to aid in the selling of merchandise. Significantly, claimant's contract of employment prohibited him from handling the products of any competing organization (see *Matter of Kaiser [Woodmen of World Life Ins. Soc. — Ross],* 53 NY2d 949). Next, the corporation contends that the board erred in concluding that claimant resigned his employment with good cause. We must agree with this contention. The board found that claimant had good cause for leaving his employment "because he realized he was unable to earn enough". As this court has previously stated, the general intent of the Unemployment Insurance Law does not envision payment of benefits in a situation such as this (*Matter of Sellers [J. W. Mays, Inc. — Catherwood],* 13 AD2d 204). Indeed: "The primary purpose of the law is to ease the hardship of involuntary unemployment due to economic conditions or other conditions beyond the control of the employee. It was not intended as a substitute for a minimum wage law" (*id.,* at pp 205-206; see, also, *Matter of Consentino [Ross],* 71 AD2d 1042, 1043). Under the Labor Law, claimant is not entitled to benefits after a voluntary separation because of dissatisfaction with wages unless he comes within the terms of an exception contained in section 593 (subd 1, par [a]) of the Labor Law. The pertinent part of that subdivision provides that: "voluntary separation from employment shall not in itself disqualify a claimant if circumstances have developed in the course of such employment that would have justified the claimant in refusing such employment in the first instance under the terms of subdivision two of this section". Section 593 (subd 2, par [d]) provides, *inter alia,* that a claimant shall not be disqualified if: "[T]he wages or compensation * * * offered are substantially less favorable to the claimant than those prevailing for similar work in the locality, or are such as tend to depress wages or working conditions." Although claimant's total wages were rather meager,

the board failed to make a finding that claimant fell within the ambit of the exception contained in section 593. Moreover, the instant record wholly fails to demonstrate that claimant came within the terms of the exception (see *Matter of Sellers [J. W. Mays, Inc. — Catherwood], supra*). Decision reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith. Sweeney, J. P., Kane and Weiss, JJ., concur.

Casey and Levine, JJ., dissent and vote to affirm in the following memorandum by Casey, J. Casey, J. (dissenting). We cannot agree that the board erred in finding that claimant had good cause for leaving his employment. Claimant was employed as a salesman on a straight commission basis. The record contains proof that after working five days per week for 22 weeks and earning no more than $700 in commissions during that period, with no commissions in the last three weeks, claimant quit in order to look for other employment which would provide sufficient compensation to support himself and his family. In our view, this proof constitutes substantial evidence to support the board's finding that claimant had good cause for leaving his employment. While the Unemployment Insurance Law plainly was not intended to serve as a substitute for a minimum wage law, it should not be construed as to preclude the board from granting benefits to claimants who leave employment which, through no fault of their own, pays far less than that necessary to support themselves or their families. In this regard, there is nothing in the record to suggest that claimant's inability to earn more commissions was due to any lack of effort on his part, and $700 in 22 weeks is patently insufficient to provide even the bare essentials of support. The case of *Matter of Sellers (J. W. Mays, Inc. — Catherwood)* (13 AD2d 204) is distinguishable, for there claimant was hired at a fixed weekly wage with which he later became dissatisfied. Similarly, in *Matter of Consentino (Ross)* (71 AD2d 1042), claimant was originally hired at a fixed hourly wage and she became dissatisfied with the wage after it was reduced when she failed to qualify for the license necessary to continue at the higher wage. In neither case was there any claim that the wages were insufficient to support claimants and their families. Here, on the other hand, claimant originally accepted employment with no fixed or guaranteed rate of compensation and after working 22 weeks, discovered that the commissions generated by his work were insufficient to support himself or his family. Nor can we agree with the majority that when adequacy of compensation is the basis of a claimant's decision to leave his employment, the board is limited to consideration of the criteria in section 593 (subd 2, par [d]) of the Labor Law, for "the list [contained in section 593 (subd 2)] is not exclusive by its very terms" (*Matter of Crowe [Dates Laundry Serv. — Corsi]*, 280 App Div 427, 430, affd 305 NY 699). In *Matter of Bus (Bethlehem Steel Corp. — Catherwood)* (37 AD2d 98, affd 32 NY2d 955), this court held that, as a matter of law, a 15% reduction in wages did not constitute "good cause", pointing out that reduced wages was not listed in subdivision 2 of section 593 of the Labor Law. But the court further noted (*id.,* at p 102): "To hold otherwise would mean that workers in this State would be subsidized by unemployment insurance benefits when by accepting work for which they are fitted by experience and training *they could support themselves*" (emphasis added). Where, as here, the board finds that a claimant left his employment not merely because of his dissatisfaction with the wage but, rather, because the compensation was so inadequate that he could not support himself or his family, there is no need for the board to further determine, pursuant to section 593 (subd 2, par [d]) of the Labor Law, whether the compensation was also substantially less favorable than that prevailing for similar work in the locality or was such as tended to depress wages or working conditions. Since the board's finding that claimant

had good cause for leaving his employment is supported by substantial evidence and has a rational basis, the decision should be affirmed.