KEY STATE BANK v ADAMS

Docket No. 71910. Submitted February 15, 1984, at Lansing.—Decided November 5, 1984. Leave to appeal applied for.

Georganne Adams was employed by the Key State Bank as a teller, a position in which she was required to work on alternate Saturdays. After working in the position for several months, Adams began attending the Seventh-day Adventist Church and subsequently notified the bank that she was no longer willing to work on Saturdays as it conflicted with her religious beliefs. The bank made an attempt to accommodate her but notified her that such accommodation would work an undue hardship on other employees who refused to work Adams's Saturday work shifts. After Adams refused to work on a Saturday she was placed on a probationary status. When she failed to work the following Saturday she was discharged from her employment. Adams applied for unemployment compensation benefits, which were denied by a referee on the basis that she had voluntarily left her employment and was therefore disqualified for benefits. Adams appealed to the Employment Security Board of Review, which reversed the referee's decision and held that Adams was eligible for benefits. The bank appealed to the Genesee Circuit Court, and the Michigan Employment Security Commission was added as a party defendant by stipulation of the parties. The circuit court, Robert M. Ransom, J., affirmed the board of review decision, and the bank appealed. The bank alleged that Adams was not entitled to unemployment benefits because she chose to acquire religious beliefs which conflicted with her employment after beginning that employment. *Held:*

1. Unemployment compensation is designed to guarantee

REFERENCES FOR POINTS IN HEADNOTES
[1] 16A Am Jur 2d, Constitutional Law § 477.
[2] 76 Am Jur 2d, Unemployment Compensation § 5.
[3, 4] 16A Am Jur 2d, Constitutional Law § 490.
   76 Am Jur 2d, Unemployment Compensation § 72.
   Supreme Court cases involving establishment and freedom of religion clauses of Federal Constitution. 37 L Ed 2d 1147.
   Leaving or refusing employment for religious reasons as barring unemployment compensation. 12 ALR4th 611.

benefits to employees who are out of work through no fault of their own. The determination of fault is to be made in light of the First Amendment Freedom of Religion provision, not solely on the basis of the language of the statute defining ineligibility.

2. The fact that Adams adopted her religious views after gaining employment does not distinguish her case from those wherein an employer changed the employee's conditions and thereby infringed upon the employee's previously held beliefs. The prime consideration is that the employee was put to a choice between fidelity to religious belief and cessation of work. The state's interest in granting benefits only to those who are involuntarily unemployed is not so compelling as to allow the state to constitutionally deny Adams the benefits sought.

Affirmed.

DANHOF, C.J., dissented. He would hold that under the circumstances of this case the claimant's First Amendment rights would not be infringed by the denial of unemployment benefits. He found that the circumstances of this case are distinguishable from those in the cases relied upon by the majority to uphold the payment of benefits, and that the statutory scheme serves a valid state purpose which is substantially served by denying benefits to Adams. He would reverse.

### OPINION OF THE COURT

1. CONSTITUTIONAL LAW — FREEDOM OF RELIGION — STATE ACTION.

A claim brought for interference with the free exercise of religion must be based on state action, not private action (US Const, Am I).

2. UNEMPLOYMENT COMPENSATION — UNEMPLOYMENT BENEFITS.

The purpose of unemployment compensation is to guarantee benefits to employees who are out of work through no fault of their own.

3. UNEMPLOYMENT COMPENSATION — RELIGIOUS BELIEFS — DISQUALIFICATION FOR BENEFITS.

The state may not deny unemployment compensation benefits to an employee who for bona fide religious reasons refused to work on Saturdays and who subsequently was discharged from employment after her employer attempted unsuccessfully to accommodate the employee's requests not to work on Saturdays, even where the employee adopted her religious beliefs after having been employed and working Saturdays for several months.

DISSENT BY DANHOF, C.J.

4. UNEMPLOYMENT COMPENSATION — RELIGIOUS BELIEFS — DISQUALI-
   FICATION FOR BENEFITS.
   *A discharged employee is not entitled to unemployment compen-
   sation benefits where she began work knowing that the employ-
   ment required Saturday work, she worked on Saturdays for a
   period but later refused to do so after changing her religious
   beliefs to a creed which did not permit Saturday work, her
   employer imposed no new conditions upon her, and her em-
   ployer attempted unsuccessfully to accommodate her newly
   held religious beliefs; under such circumstances, the employee
   should be found to have left her employment voluntarily with-
   out good cause or for reasons not attributable to the employer
   (MCL 421.69[2][a]; MSA 17.569[19][2][a]).*

*Des Jardins & Moorhead, P.C.* (by *Jerry L. Des
Jardins)*, for appellant.

*Vernon L. Alger,* for claimant.

Before: DANHOF, P.J., and HOOD and SHEPHERD,
JJ.

SHEPHERD, J. Appellant, Key State Bank, em-
ployed appellee Georganne Adams in a position
requiring Saturday work. Subsequent to com-
mencement of her employment, and after working
on Saturdays for a period of several months, Ad-
ams underwent conversion to the Seventh-day Ad-
ventist Church and refused to work on Saturdays
any longer. Appellant discharged Adams after try-
ing, without success, to accommodate her religious
beliefs. The issue posed is whether Adams is enti-
tled to unemployment compensation benefits. We
hold that the Free Exercise Clause of the First
Amendment, US Const, Am I, prevents the state
from withholding benefits when the reason for
termination of employment is based upon conver-
sion to a religious faith.

Adams began work with the bank as a teller on
July 2, 1979. As a condition of her employment (a
condition of which she was aware when she was

hired), Adams was required to work every other Saturday. In September, 1981, she began attending the Seventh-day Adventist Church. She and her husband became increasingly involved with the church, beginning Bible studies in January, 1982. They accepted the doctrine of the church (namely, that the Sabbath, Saturday, should be kept holy, which meant that Adams could not work on Saturdays).

On February 15, 1982, Adams notified the bank of the conflict between her work schedule and her newly acquired religious beliefs and requested that the bank accommodate her. She continued to work Saturdays through February 27, 1982. On March 4, 1982, the bank advised her that an accommodation could not be made without undue hardship to other employees who refused to take Adams's Saturday work shifts. The bank notified Adams that she would be kept in mind for other available positions which would not require Saturday work as such positions arose.

Adams refused to work on the next Saturday on which she was scheduled to work. The bank placed her on probation for a 30-day period, explaining that failure to work on Saturdays would result in her termination. Nevertheless, she indicated that she would not work on Saturdays. She was again scheduled to work on Saturday, April 10, but was absent from work on that day. On the following Monday she was notified that her employment was being terminated for failure to comply with bank policy regarding her work schedule. On April 17, 1982, Adams was officially baptized as a member of the Seventh-day Adventist Church.

Adams's initial application for unemployment benefits was denied. She filed an appeal and a referee hearing was held. On July 9, 1982, the referee issued his opinion denying her unemploy-

ment benefits on the ground that she was disqualified for voluntarily leaving within the meaning of § 69(2)(a) of the Michigan Employment Security Act, MCL 421.1 *et seq.;* MSA 17.501 *et seq.* Adams appealed the referee's decision to the Employment Security Board of Review. On December 8, 1982, the board reversed the referee's decision, holding that Adams was eligible for benefits.

On the bank's appeal to the circuit court, the Michigan Employment Security Commission was added as a party defendant by stipulation of the parties. On June 1, 1983, the circuit court affirmed the decision of the Board of Review. The bank appeals as of right.

The bank argues that Adams is not entitled to unemployment benefits because she chose, after beginning employment, to acquire religious beliefs which conflicted with the requirements of her job. We disagree.

The applicable statutory provision regarding disqualification for unemployment compensation benefits is set forth in MCL 421.69; MSA 17.569(19), and provides in part as follows:

"(1) Notwithstanding section 29(1)(a) and (b) and section 29(3), (4), and (9), for separations occurring after March 1, 1981, and before April 1, 1983, the following provisions are applicable.

"(2) An individual shall be disqualified for benefits, in all cases in which he or she:

"(a) Has left work voluntarily without good cause attributable to the employer or employing unit."

For substantial guidance, we turn to the United States Supreme Court's decisions in *Sherbert v Verner,* 374 US 398; 83 S Ct 1790; 10 L Ed 2d 965 (1963), and *Thomas v Review Bd of Indiana Employment Security Div,* 450 US 707; 101 S Ct 1425;

67 L Ed 2d 624 (1981). In *Thomas,* a Jehovah's Witness left his job because of religious convictions after being transferred to a munitions factory. At the time that he commenced employment in a foundry, Thomas indicated on his employment application that he was a Jehovah's Witness and studied the Bible. However, he placed no conditions on his employment, nor did he set forth the basic tenets of his religion. After one year's work, the employer closed the foundry and transferred Thomas to a department that manufactured military equipment. Upon realization of this fact, he checked to see if any of the other departments produced nonmilitary items. When this check yielded a negative answer, Thomas requested a layoff on the ground that he could not participate in the production of military equipment without violating the principles of his religion. The employer denied this request. Thomas then quit his job.

Thomas's application for unemployment compensation benefits was denied. The hearing referee specifically found that "claimant did quit due to his religious convictions" but denied benefits on the basis that Thomas quit without "good cause [arising] in connection with [his] work" as required by the Indiana unemployment compensation statute. 450 US 712. The Supreme Court reversed, finding that the state's denial of benefits infringed upon Thomas's free exercise of religion.

The *Thomas* decision relied to a large extent upon *Sherbert, supra.* In *Sherbert,* an employee was discharged for failure to work on Saturdays, which would have been against her religious principles. The claimant therein became a member of the Seventh-day Adventist Church at a time when her employer permitted her to work a five-day week. When all three shifts in the employer's mill

began working Saturdays, the claimant refused to work and was discharged. The state denied her unemployment benefits for the reason that she was "available" for "suitable work" which she refused to accept. Under the South Carolina unemployment compensation scheme, she was deemed disqualified for benefits. In *Sherbert,* the Court set forth the requisite inquiry as follows:

"If, * * * the decision of the South Carolina Supreme Court is to withstand appellant's constitutional challenge, it must be either because her disqualification as a beneficiary represents no infringement by the State of her constitutional rights of free exercise, or because any incidental burden on the free exercise of appellant's religion may be justified by a 'compelling state interest in the regulation of a subject within the State's constitutional power to regulate * * *.' " 374 US 403.

In the instant case, the bank contends that, after accepting employment with the understanding that it entailed Saturday work, Adams changed her religion voluntarily, thereby creating circumstances where her unemployment was not involuntary. Since the Michigan Employment Security Act seeks to compensate those who have become unemployed involuntarily, it is argued that claimant Adams is therefore ineligible for unemployment benefits. The bank posits that in both *Thomas* and *Sherbert* the employer changed the employment conditions, either the assigned type of work or scheduled hours, which caused the employment to become objectionable to the affected employees' religious beliefs. This it deems to be a "critical difference", relying on *Hildebrand v Unemployment Ins Appeals Bd,* 19 Cal 3d 765; 140 Cal Rptr 151; 566 P2d 1297 (1977). We are not persuaded by this argument.

In order for a free exercise claim to hold merit,

it must be based on state action. *Abington Twp
School Dist v Schempp,* 374 US 203, 226; 83 S Ct
1560; 10 L Ed 2d 844 (1963); *Sherbert, supra,* 374
US 402. Hence, the focus of the Court in *Thomas,
supra,* and *Sherbert* was not on the conduct of the
employers, but on the state's conditioning "receipt
of an important benefit upon conduct proscribed
by a religious faith, or [denial of] such a benefit
because of conduct mandated by religious belief".
*Thomas, supra,* 450 US 717-718. Doubtless the
employer in *Sherbert* acted within its rights when
it instituted Saturday work. Similarly, there was
nothing improper or unlawful in the employer's
closure of its foundry in *Thomas.* In the present
case, we do not have a direct action by Adams
against the employer for wrongful discharge and
the bank had a legitimate business reason for
requiring its employees to work Saturdays. *Trans
World Airlines, Inc v Hardison,* 432 US 63, 83-85;
97 S Ct 2264; 53 L Ed 2d 113 (1977). Adams is not
alleging discrimination by her employer, and we
need not address that issue.

We hasten to agree that unemployment compen-
sation is designed to guarantee benefits to employ-
ees who are out of work through no fault of their
own. *I M Dach Underwear Co v Employment Secu-
rity Comm,* 347 Mich 465; 80 NW2d 193 (1956);
*Kempf v Michigan Bell Telephone Co,* 137 Mich
App 574; 358 NW2d 378 (1984). Nonetheless, as in-
dicated by the decisions in *Thomas* and *Sherbert,
supra,* whether the claimant can be viewed as
being at fault is a determination which must be
made in light of the First Amendment, not the
language employed in a state statute. In both
*Sherbert* and *Thomas,* the claimants acted "volun-
tarily" in the sense that they were not forced by
their employers to exercise their religious beliefs.
In fact, Thomas quit his job, yet this circumstance

did not allow for a distinction between his case and Sherbert's. "In both cases, the termination flowed from the fact that the employment, once acceptable, became religiously objectionable because of changed conditions." *Thomas, supra,* 450 US 718.

That the benefits in question are substantially funded by employer contributions does not diminish the state's role in their distribution. The Indiana and South Carolina compensation schemes at issue in *Thomas* and *Sherbert,* respectively, also provided for assessments against the employer. Indiana Code, § 22-4-10-1; 1976 South Carolina Code, § 41-31-10 *et seq.* (formerly 1962 Code, § 68-171 *et seq.*).

The only factual difference between this case and the Supreme Court precedents is that the claimant herein adopted her religious beliefs after gaining employment. We do not accept the view that the First Amendment protects the right to adhere to religious beliefs, but not the right to adopt such beliefs in the first instance or convert from one faith to another. Appellant attempts to make such a distinction, citing the statement in *Sherbert,* 374 US 410, that "[t]his is not a case in which an employee's religious convictions serve to make him a non-productive member of society". Like Sherbert, Adams is willing to work any day but Saturday. *Id.,* p 399, fn 2. The important factor, common to the three cases, is that "the employee was put to a choice between fidelity to religious belief or cessation of work". *Thomas, supra,* 450 US 717. There is no dispute as to the sincerity of this claimant's beliefs, nor is there a claim that she joined the new church as a pretext to avoid Saturday work. The state's interest in granting benefits only to those who are involuntarily unemployed is no more compelling here

than in *Thomas, supra,* p 719. Accordingly, the state may not constitutionally apply the eligibility provision to deny her the benefits sought.

Affirmed.

HOOD, J., concurred.

DANHOF, C.J. *(dissenting).* In this case, we are called upon to decide whether a claimant is entitled to unemployment compensation benefits where: she began work knowing that her employment required Saturday work; she worked on Saturdays for a period after becoming employed, but later refused such work once she had changed her religious beliefs to a creed which did not permit Saturday work; the employer imposed no new conditions upon her; and the employer, a small bank with few employees, attempted in good faith (but without success) to accommodate her newly held religious beliefs. Under these circumstances, I would hold that the claimant's First Amendment rights were not infringed by the denial of unemployment compensation.

In both *Thomas v Review Bd of Indiana Employment Security Div,* 450 US 707; 101 S Ct 1425; 67 L Ed 2d 624 (1981), and *Sherbert v Verner,* 374 US 398; 83 S Ct 1790; 10 L Ed 2d 965 (1963), the employer changed the employment conditions which caused the employment to become objectionable on the basis of the employees' religious beliefs. In *Hildebrand v Unemployment Ins Appeals Bd,* 19 Cal 3d 765; 140 Cal Rptr 151; 566 P2d 1297 (1977), the following language and reasoning was employed:

"*Sherbert* is distinguishable from the present case. In *Sherbert* the high court examined the circumstances under which a prospective employee refused without good cause 'to accept available suitable work.' Although

California imposes a similar 'suitable work' require-
ment upon claimants (§ 1257), the legality of that stat-
ute is not before us. Instead, measuring the constitu-
tionality of section 1256, we must determine whether
plaintiff, having initially accepted employment, thereaf-
ter left work 'voluntarily without good cause.' The
public policy underlying section 1256 has been recog-
nized both statutorily and judicially. By denying unem-
ployment benefits to one who has voluntarily termi-
nated employment without good cause, the state pro-
motes a valid purpose in assuring that unemployment
benefits are reserved 'for persons unemployed through
no fault of their own, and to reduce involuntary unem-
ployment and the suffering caused thereby to a mini-
mum.'

\* \* \*

"We emphasize the critical difference in the two
cases. As illustrated by, and rejected in, *Sherbert* the
condition of work imposed upon the initial employment
required an impermissible sacrifice of conscience. In the
matter before us, the condition was knowingly and
voluntarily accepted, work commenced, and a change of
mind and heart thereafter ensued, doubtless motivated
by the very deepest and most sincere of impulses." 19
Cal 3d 770-771.

Similar results based upon similar reasoning have
been reached by other jurisdictions considering
facts not unlike those presently before us. See
*Martinez v Industrial Comm of Colorado,* — Colo
App —; 618 P2d 738 (1980), *Levold v Employment
Security Dep't,* 24 Wash App 472; 604 P2d 175
(1979), and *Kut v Albers Super Markets,* 146 Ohio
St 522; 66 NE2d 643 (1946).

I recognize that Adams does not allege religious
discrimination on the part of the bank, but rather,
challenges this state's statutory scheme of disqual-
ification from unemployment compensation. The
*Thomas* Court delineated this distinction when it
said that what is impermissible is "[w]here the
state conditions receipt of an important benefit

upon conduct proscribed by a religious faith". 450 US 717. The instant case, however, possesses several distinguishing characteristics not present in *Thomas* and *Sherbert.*

First, unlike the employers in *Thomas* and *Sherbert,* the employer here made no changes in its terms of employment which would interfere with Adams's exercise of her religion. She made the change. Second, the bank here clearly attempted to accommodate Adams. It asked the other tellers if they would mind working her Saturday hours, but this attempt proved fruitless. Further, the bank offered any forthcoming suitable employment to her.

Finally, the benefits conferred here are not simply state-paid benefits; they are benefits substantially funded by employers. The employment security statutes essentially establish rules and guidelines for payment of benefits largely paid by employers. The statutory scheme as a whole is designed to guarantee continuing benefits to employees who are involuntarily terminated without cause. *General Motors Corp v Employment Security Comm,* 20 Mich App 379, 384; 174 NW2d 5 (1969). The system is not intended to compensate those who leave their employment voluntarily without good cause or for reasons not attributable to their employers.

For the reasons stated herein, I would hold that Adams is not entitled to benefits according to MCL 421.69(2)(a); MSA 17.569(19)(2)(a). She was not penalized by her employer for exercising her religious beliefs, nor was she forced into unemployment through arbitrary, unfair, or illegal actions by her employer. The statutory scheme, designed as it is to protect employees from such actions, serves a valid state purpose and is substantially served by denying Adams benefits in the instant case. I would reverse.