BUILDING AND CONSTRUCTION TRADES DEPARTMENT, AFL–CIO, et al., Plaintiffs,

v.

Raymond J. DONOVAN, et al., Defendants.

Civ. A. No. 82–1631.

United States District Court, District of Columbia.

Dec. 23, 1982.

See also, D.C., 543 F.Supp. 1282.

Laurence Gold, AFL–CIO, Washington, D.C., for plaintiffs.

Surrell Brady, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

On July 22, 1982, 543 F.Supp. 1282, the Court issued a preliminary injunction restraining the enforcement of certain regulations which the Secretary of Labor had issued ostensibly in implementation of the Davis-Bacon Act, 40 U.S.C. § 276a *et seq.*, and the Copeland Anti-Kickback Act, 40 U.S.C. § 276c. The same matter is now before the Court on the parties'[1] cross motions for summary judgment.

The order granting the preliminary injunction was accompanied by a Memorandum which discusses the various regulations and the issues of this lawsuit at some length and, except for certain specific matters, no useful purpose would be served by plowing over the same ground once again in similar or greater detail.

Briefly, the July 22 Memorandum expressed the Court's view that the statutory language and the legislative history regarding the basis for the five types of regulations at issue was somewhat ambiguous, with language and history supporting the Secretary's interpretation more strongly with respect to some of the regulations and less strongly with respect to others. The Court ultimately resolved the doubts for preliminary injunction purposes in favor of the plaintiffs because each of the regulations issued by the present Secretary of Labor is wholly inconsistent with administrative interpretation contemporaneous with the enactment of the statutes about 1935 and consistent administrative practice since then. See generally *Norwegian Nitrogen Co. v. United States,* 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933). The Court will now simply add the following to what was said on July 22, 1982.

First. Nothing substantially new has been adduced by the parties or the *amicus* or found by the Court with respect to three of the challenged regulations.

■ a. The Act directs the Secretary, in his ascertainment of the prevailing wage, to determine wages for "projects of a character similar to contract work." 40 U.S.C. § 276a. As the Court previously pointed out, administrative practice from the early 1930s on has been to consider both private and public projects in ascertaining the appropriate standard for ascertaining the prevailing wage. The present Secretary's at-

---

1. The Court permitted the Associated Builders and Contractors to file briefs as *amicus curiae* in support of the position of the Secretary of Labor.

tempt to alter this consistent practice[2] is based essentially on nothing more than his policy difference with the preceding fifteen Secretaries of Labor. That is not enough. See Memorandum of July 22 at pp. 12–14.

■ b. The next point of dispute centers around the question whether, in setting prevailing wage rates for rural areas, the Secretary may consider the wages being paid in nearby metropolitan areas. As the Court previously indicated, the legislative history of this provision is mixed, but here, too, the ambiguities are fully resolved by contemporaneous and consistent administrative practice against the construction adopted by the present Secretary.

■ c. The Copeland Act requires the Secretary to issue regulations for federal contractors which, *inter alia,* require such contractors to "furnish weekly a statement with respect to the wages paid each employee during the preceding week." Secretaries of Labor have always construed this provision to mean that copies of the actual weekly payroll must be submitted. The regulations issued by the present Secretary, however, would require only a statement from the contractor that he had complied with the Act. The new regulation suffers not only from the same infirmity as the others referred to above—that it is contrary to consistent, long-standing administrative practice—but it is also subject to the additional criticism that it would render the Act largely unenforceable. See pp. 10–11 of the Memorandum of July 22, 1982.

Second. The Davis-Bacon Act provides that every federal construction contract shall contain a provision to the effect that the minimum wages being paid to various classes of laborers and mechanics shall be those determined by the Secretary "to be prevailing" for corresponding classes of laborers and mechanics. The existing regulations define "prevailing wage" as the wages being paid to at least thirty percent of those so employed. The new regulations issued by the present Secretary and tempo-

rarily enjoined by the Court would change this standard to provide in essence that a wage shall be deemed prevailing only if it is paid to a majority (more than fifty percent) of a particular class.

The Act itself does not provide a definition of "prevailing wage," and it is abundantly clear that the definitional task was entirely delegated to the Secretary. There is nothing intrinsically appropriate or inappropriate to the thirty percent rule or to any other figure as representing the "prevailing wage." Moreover, the legislative history of the statute and its purposes do not provide support for any particular figure. The statute quite simply relies on the Secretary to give content from time to time to the term "prevailing wage" in the exercise of his discretion and his expertise. There is no indication that Congress intended the first Secretary of Labor following enactment of the law to define the definition of prevailing wage for all time. To the contrary, contemporaneous and subsequent legislative materials indicate that Congress was fully aware that the definition might or would be adjusted depending on existing conditions. See 74 Cong.Rec. 6516 (Feb. 28, 1931); 75 Cong.Rec. 12365 (June 8, 1932); Hearings before Senate Committee on Labor and Human Resources on Military Construction Authorization Act of 1980, 96th Cong., 1st Sess. at 363 (1979).

■ In view of the background, which differs significantly from that of the other regulations at issue here, the Court concludes that, notwithstanding prior administrative practice, it was not improper for the Secretary to substitute the fifty percent standard for the earlier thirty percent standard. Accordingly, the Court will not enjoin that part of the new regulation which sets the prevailing wage as the wage paid to the majority (more than 50 percent) of the various classes of laborers and mechanics.

---

**2.** This consistent administrative practice was well known to the Congress, but it was never overruled by that body.

■ Third. The post-argument briefs, including particularly that of the *amicus,* focus on the "helper" issue. In its Memorandum of July 22, 1982, the Court expressed the view that the various regulations which would permit a substantial increase in the number of "helpers" in the construction industry probably did not reflect the will of the Congress. The Associated Builders and Contractors argue with considerable vigor that the Secretary's revisions of the "helper" regulations are correct. In this regard, the *amicus* points to an alleged statutory mandate to establish classifications by regulation that would mirror actual practice; that the scope and significance of the helper category has expanded dramatically in recent years (particularly in non-union shops); and that the helper classification promotes employee opportunity. These arguments proceed from erroneous premises and they are insufficient to overcome the conclusions to be drawn from the basic legislative purpose.

The crux of the matter is this. The integrity of the statutory scheme requires that each "class of laborers and mechanics" be comprised of "members" who perform "well-defined tasks" and do not perform traditional craft work of another, higher paid class. This is a fundamental principle with which apparently neither the Secretary of Labor nor the *amicus* quarrel, at least not in theory. Indeed, the *amicus* argues that the Secretary's definition of "helper" will maintain "the strict lines of demarcation between skilled and unskilled labor." Memorandum at p. 15. But in practice that distinction can be maintained only if the tasks of the helper class are defined as discrete and distinguishable from those of laborers and mechanics.

Yet the new regulations would allow helpers to substitute for laborers and for journeymen, and that helpers would be allowed to perform tasks of all sorts. Under these regulations, "helpers" would *not* be performing well-defined tasks, either with regard to type of skill or to amount of experience, but they would be available in a general way to substitute for workers of many types and many levels of experience.[3]

The *amicus* suggests that any problems in this regard are remedied by the provision in the regulation which forbids contractors to pay reduced rates for work "properly performed" by classes other than helpers (Memorandum, p. 17). However, since the entity which will determine whether a particular task is "properly performed" by a helper or by a skilled person will be the contractor, it may reasonably be assumed that his determination will follow his self-interest: lower-paid helpers will be regarded as properly performing many tasks traditionally beyond their competence. When Congress enacted the Davis-Bacon Act, it was well aware of these practicalities (see, *e.g.,* Cong.Rec. Senate, p. 12073 (July 30, 1935)) and it sought to guard against them. It is quite clear that the new regulation would subvert the congressional will.[4]

Despite its seeming complexity, the basic issue governing this lawsuit is relatively simple. Congress enacted the Davis-Bacon Act and the Copeland Act in the 1930s with certain purposes in mind. Regulations were issued very shortly following the enactments to implement the words and purposes of the legislature. In spite of substantial public debate concerning both the laws and the regulations in the years since then, the Congress has not amended the law and it has not expressed its displeasure with the regulations. Moreover, fifteen Secretaries

---

**3.** The legislative history indicates that when "actual practice" may be equated with a practice to evade the prevailing wage requirement it is not determinative. Cong.Rec. Senate, p. 12073, July 30, 1935.

**4.** As for the argument of the *amicus* that increased use of the helper classification promotes employee opportunity, it appears that as of 1978 minority participation in joint union-

management apprenticeship programs was 21.2 percent while its participation in open-shop trading programs was only 11.4 percent. Department of Labor data tabulated for Union and Open Shop Construction, p. 72 (1978). The regulation adopted by the present Secretary is likely to have the effect of allowing contractors to replace higher wage minority laborers with lower wage minority helpers.

of Labor serving under eight Presidents have never altered the regulatory scheme. The present Secretary's claim to have discovered a wholly different congressional intent rings hollow in the light of that history.

For the reasons stated, the Court this day permanently enjoins the enforcement of all the new regulations at issue here, with the sole exception of the regulation which defines the prevailing wage in terms of a higher percentage of employees in each class of laborers and mechanics than was provided for heretofore.