

# The Attorney General of Texas

March 31, 1986

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

01 Texas, Suite 700
..ouston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable George Fierce
Chairman
Committee on Urbar. Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-463

Re: Whether an ordinance of the city of San Antonio, which requires apprentices and/or trainees in city projects to be enrolled in a program registered with the United States Department of Labor, is violative of state right-to-work laws

Dear Representative Pierce:

You ask whether a·San Antonio ordinance, which requires apprentices on city projects to be enrolled in-an apprentice program registered with the United States Department of Labor, violates Texas' "right-to-work" laws. See V.T.C.S. art. 5207a. Section 2 of article 5207a, commonly known as the "right-to-work" law, provides that "[n]o person shall be denied employment on account of membership or nonmembership in a labor union." You state that

> [s]ince apprentice programs now in operation in Bexar County are operated by unions, and are open only to union members, workers seem to be precluded from participation in these programs unless they become union members.

As will be shown in the discussion to follow, however, the registered apprentice programs required under the San Antonio ordinance are not limited to union programs.

The ordinance in question provides, in part, as follows:

> Apprentices will be permitted to work at less than the predetermined rate for the work they perform when they are employed and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Bureau of Apprenticeship & Training, or with a State Apprenticeship Agency recognized by the Bureau, or if a person is employed in his first 90 days of probationary

> employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Bureau of Apprenticeship & Training or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen in any craft classification shall not be greater than the ratio permitted to the contractor/subcontractor as to his entire work force under the registered program. . . . The wage rate paid apprentices shall be not less than the specified rate in the registered program for the apprentice's level of progress expressed as the appropriate percentage of the journeyman's rate contained in the applicable wage determination decision. (Emphasis added).

General Conditions of San Antonio Ordinance §15.a, No. 60110 (Jan. 17, 1985).

The underscored language in the portion of the ordinance which is quoted above tracks the language in the federal regulations governing apprentice programs. See 29 C.F.R. §5.5(a)(4)(i) (1985). Consequently, an explanation of the origin, operation, and purpose of federally-approved apprentice programs for public works projects will illuminate the reasons for the adoption of the requirement in question and must precede our response to your specific question.

Registered apprentice programs are part of the federal regulatory scheme requiring prevailing wages and minimum working conditions on contracts for the construction, repair, or improvement of public buildings or works which receive or expect to receive federal financial assistance. See 29 C.F.R. §5.1 (1985), et seq.; see generally North Georgia Building and Construction Trades Council v. Goldschmidt, 621 F.2d 697 (5th Cir. 1980). The regulations coordinate the administration and enforcement of the labor standards provisions of numerous federal acts which authorize federal financial assistance for a variety of state and local projects. See §5.1. The main labor legislation incorporated in these acts and forming the basis for the regulations is the Davis-Bacon Act, 40 U.S.C. §276a (1982), et seq. This act requires the payment of wages on certain public contracts which are at least equivalent to those which prevail in the locality for the same classification of work on similar projects. Sec. 276a(a). The act protects the employees of government contractors from substandard wages and ensures that local workers are not precluded from work on government projects by the importation of cheap labor from distant sources. Tennessee Roadbuilders Assn. v. Marshall, 446 F.Supp. 399, 401 (MD. Tenn. 1977); See United States v. Binghamton

Construction Company, Inc., 347 U.S. 171 (1954); North Georgia Building and Construction Trades Council v. Goldschmidt, 621 F.2d 697 (5th Cir. 1980).

Approved apprentice programs involve the payment, under certain conditions, of wages which are less than the prevailing wage and which are stated as a percentage of the prevailing journeyman wage. See 29 C.F.R. §5.5(a)(4). The secretary of labor is charged by statute to formulate and promote labor standards necessary to safeguard the welfare of apprentices. See 29 U.S.C. §§50, 50a (1982). The idea behind apprentice programs is that the apprentice will receive training in return for his work at lower than minimum prevailing wages. See 29 U.S.C. §214 (1982). The main focus of the approved programs limits the allowable ratio of apprentices to journeymen on the job site in each craft classification. See 29 C.F.R. §5.5(a)(4); In re Repp & Mundt, Inc. and Goedde Plumbing & Heating Co., Inc., U.S. Dept. of Labor Wage Appeals Board Case No. 80-11 (1984).

This focus serves a number of purposes. The limit on the number of apprentices assures that the apprentice actually receives the training contemplated by the program, i.e., from observing and working under a variety of qualified journeymen in the work classification. See id. The ratio also assures that the overall quality of the public project will not suffer because of a lack of qualified journeymen. In re Repp & Mundt, Inc., at 9 (n. 3). Moreover, because certain work performed by apprentices may be inherently dangerous, incompetence or inadequate supervision of one employee can endanger the health, safety, and lives of others. Id. Finally, the ratio limit prevents contractors from undercutting the prevailing wage requirement by hiring apprentices to do the work of journeymen. Id. at 6; see also Building & Construction Trades Department, AFL-CIO, v. Donovan, 553 F. Supp. 352, 355 (D.D.C. 1982) (undercutting the act by hiring "helpers" to perform the work of journeymen is prohibited), modified (on other grounds) 712 F.2d 611 (D.C. Cir. 1983), cert. denied 464 U.S. 1069 (1984).

Thus, local governmental bodies must require that public works contractors comply with federal regulations regarding apprentice programs in order to receive federal financial assistance under a variety of federal acts. See 29 C.F.R. §5.5(a)(4). The ordinance in question, however, applies by its terms to 100% locally-funded city public works construction projects. See General Conditions of San Antonio Ordinance No. 60110, §§2, 3.

The San Antonio ordinance was enacted "[i]n accordance with article 5159a." General Conditions of San Antonio Ordinance No. 60110, §2. Section 1 of article 5159a provides, in part:

> Not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the work is performed . . . shall be paid to all laborers, workmen and mechanics employed by or on behalf of the State of Texas, or by or on behalf of any county, city and county, city, town, district or other political subdivision of the State, engaged in the construction of public works. . . .

Thus, the Texas Legislature has not only authorized but required the payment of prevailing wages on state and local public works projects.

State and local prevailing wage ordinances have been upheld in a number of jurisdictions. See, e.g., Bernardi v. City of Highland Park, 482 N.E.2d 114 (Ill. App. Ct. 1985); Roland Electrical Co. v. Mayor and City Council of Baltimore, 124 A.2d 783 (Md. 1956); see also Commission of Labor and Industries v. Worcester Housing Authority, 393 N.E.2d 944 (Mass. App. Ct. 1979); In re Sellers, 215 N.Y.S.2d 385 (N.Y. App. Div. - 1961). The Supremacy Clause of the United States Constitution does not require a state or city to adopt the federal prevailing wage scheme on wholly locally-funded public works projects. See Hayen v. County of Ogle, Illinois, 463 N.E.2d 124, 129 (Ill. 1984); cf. Attorney General Opinion H-911 (1976). Its adoption, however, is certainly not prohibited. See, e.g., Ritchie Paving, Inc., v. Kansas Department of Transportation, 654 P.2d 440 (Kan. 1982). In Ritchie Paving, the Kansas Department of Transportation adopted the federal wage rates for a wholly state-funded project. The Kansas Supreme Court upheld this action against a challenge that it violated the state's prevailing wage statute. The court reasoned that, because the state prevailing wage statute was modeled after the federal act, the federal standard was not inconsistent with the purpose of the state act. 654 P.2d at 444-45. The court also indicated that the adoption of the federal standard was not an invalid delegation of authority because the decision to use the federal scale was that of the state transportation department, not the federal department of labor. 654 P.2d at 445.

Similar considerations apply to the case at hand. One of the primary objectives of the statute is to protect workers. Texas Highway Commission v. El Paso Building and Construction Trades Council, 234 S.W.2d 857 (Tex. 1950); Cullipher v. Weatherby-Godbe Construction Co., Inc., 570 S.W.2d 161, 164 (Tex. Civ. App. - Texarkana 1978, writ ref'd n.r.e.); Southern Prison Co. v. Rennels, 110 S.W.2d 606, 609 (Tex. Civ. App. - Amarillo 1937, writ dism'd); Attorney General Opinion JM-329 (1985). The act not only authorizes the compliance with federal standards that is necessary to the receipt of federal financial assistance but parallels the federal purpose on

100% locally-funded projects. Article 5159a was modeled on the Davis-Bacon Act. Attorney General Opinion JM-329. Consequently, we do not believe that San Antonio's adoption of the federal standards for apprentice programs on 100% locally-funded projects is inconsistent with the state prevailing wage statute.

Moreover, the courts in Rennels, Cullipher, and Texas Highway Commission indicated that a city's determination of prevailing wage is not reviewable by the courts because it is a function delegated in article 5159a to the discretion of governing bodies. The conclusion that a city has broad discretion in determining prevailing wage also suggests that it has broad discretion in deciding the related matter of apprentice programs. See Attorney General Opinion H-350 (1974). These cases, however, are based on the well-established principle that determinations of fact that are delegated to a governmental body cannot be reviewed. The legal meaning of prevailing wage and the proper scope of a city's powers under article 5159a are arguably legal questions and therefore subject to review by the courts. A decision on the meaning of prevailing wage and on the scope of a city's power under article 5159a is currently pending court decision. (No. CV-01-86-00018). The city of Houston appealed a ruling by the 152nd District Court, on December 20th, 1985 (No. 85-66195), granting a temporary injunction against the city's enforcement of a "weighted average" interpretation of prevailing wage. This office has long followed a policy of refraining from issuing an opinion on a matter which is before the courts. Because we find that the San Antonio ordinance in question is consistent with article 5159a, however, we need not address the issue of whether the city has broader powers under article 5159a.

You indicate that the apprentice programs now in operation in Bexar County are operated by unions and are open only to union members. Consequently, you suggest that non-union workers are precluded from participation in the apprentice programs in violation of article 5207a, the state's right-to-work law. This explanation of the purpose and operation of apprentice programs, however, demonstrates that the programs are designed to benefit all workers, not just union workers.

Nowhere do the San Antonio ordinance or the federal regulations upon which the ordinance is based preclude non-union employers from operating an apprentice program in accordance with the standards of the United States Department of Labor. To decide that these programs, which are designed to protect workers under the prevailing wage law, violate the state's right-to-work laws would be akin to saying that all minimum wage and maximum hour laws and minimum safety standards violate the law. See V.T.C.S. art. 5159d (minimum wage); art. 5165.1 (maximum hours); arts. 5173-5175 and 5179-5180 (protection of health and safety); art. 5181.1 (child labor); art. 5182-5182-1 (protection

of workmen on buildings); art. 5182a (occupational safety). The prevailing wage statute, article 5159a, and the right-to-work statute, article 5207a, are part of the same statutory scheme protecting labor in this state. The fact that those statutes have existed together for nearly 40 years is a good indication that the Texas Legislature does not consider them inconsistent. Consequently, we conclude that the ordinance in question does not violate the state's right-to-work laws.

## S U M M A R Y

An ordinance of the city of San Antonio, enacted pursuant to the prevailing wage law, article 5159a, V.T.C.S., that requires apprentices or trainees on 100% locally-funded public works projects to be enrolled in an apprentice program which meets the federal labor specifications does not violate the state's right-to-work law, article 5207a, V.T.C.S.

Very truly yours

JIM  MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General