KEMPF v MICHIGAN BELL TELEPHONE COMPANY

Docket No. 75060. Submitted April 30, 1984, at Marquette.—Decided September 17, 1984. Leave to appeal applied for.

Claimant, Maureen Kempf, was employed by respondent, Michigan Bell Telephone Company. She was given a medical leave of absence from December, 1979, until December, 1980, during which time she received disability payments under Michigan Bell's employee benefit plan. Three days after returning to work her employment was terminated. She applied for unemployment compensation, which was denied because she had not earned any credit weeks in the 52-week period immediately preceding the filing of the application for benefits. Claimant appealed to the Chippewa Circuit Court, which reversed, holding that claimant was entitled to preserve her credit weeks earned prior to her going on disability, Nicholas J. Lambros, J. Respondent appealed, alleging that claimant does not come within the statutory exception which allows preservation of credit weeks in certain cases of disability and that, even if she does come within that exception, her request for preservation of credit weeks was not timely. *Held:*

1. The claimant was "unemployed" within the meaning of the statutory exception while she was on medical leave, notwithstanding a definition of "unemployed" elsewhere in the Employment Security Act which would appear to preclude such an interpretation. The legislative intent of the act was to allow a person in claimant's position to come within the purview of the exception. Further, the Legislature did not intend that disability benefits be allowed to substitute for unemployment compensation.

2. While a literal reading of the statute would preclude claimant from qualifying because her application for preservation of credit weeks was not filed within 45 days of the time she went on disability, such a reading leads to an absurd result

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 76 Am Jur 2d, Unemployment Compensation §§ 32, 52, 90.
[2] 73 Am Jur 2d, Statutes §§ 145, 146.
[3] 76 Am Jur 2d, Unemployment Compensation § 6.
[5] 73 Am Jur 2d, Statutes § 313 *et seq.*

since, when she went on disability, she expected to return to
work after her disability. To avoid this absurd result, the
claimant is deemed to have had 45 days after her job loss to file
her request. This she did.

    Affirmed.

1. UNEMPLOYMENT COMPENSATION — DISABILITY — PRESERVATION OF
   CREDIT WEEKS.

    A person who is on medical disability leave from his employment
    and who, when his disability ends, is unemployed because no
    work is available at that time may be deemed to qualify for the
    preservation of credit weeks, earned in the 52-week period
    prior to going on disability, toward collection of unemployment
    compensation benefits (MCL 421.28a[6], 421.48; MSA
    17.530[1][6], 17.552).

2. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

    The spirit and purpose of a statute prevail over the strict letter
    thereof; the cardinal rule of statutory construction is to ascer-
    tain and give effect to the legislative intent.

3. UNEMPLOYMENT COMPENSATION — EMPLOYMENT SECURITY ACT —
   JUDICIAL CONSTRUCTION.

    The Michigan Employment Security Act is remedial in nature
    and is to be liberally construed to provide unemployment
    compensation coverage; conversely, its disqualification provi-
    sions are to be narrowly interpreted.

4. UNEMPLOYMENT COMPENSATION — DISABILITY.

    Disability benefits under an employee benefit plan are not a
    substitute for unemployment compensation benefits.

5. STATUTES — JUDICIAL CONSTRUCTION — ABSURD RESULTS — PRE-
   SUMED EXCEPTION.

    An exception or qualification to a statute is presumed to have
    been intended where an absurd result would be reached by a
    literal construction of the statute.

*Upper Peninsula Legal Services, Inc.* (by *Bruce Cranham)*, for plaintiff.

*Albert Calille,* for Michigan Bell Telephone Company.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Gunther C. Schwarze,* Assistant Attorney General, for the Michigan Employment Security Commission.

Before: MacKenzie, P.J., and J. H. Gillis and J. B. Sullivan,* JJ.

J. B. Sullivan, J. The subject of this dispute is whether claimant is entitled to unemployment compensation. Respondent has appealed from the circuit court's order granting plaintiff unemployment compensation and reversing the Michigan Employment Security Commission's determination. The facts of this case are undisputed and a legal question involving statutory interpretation is presented.

Claimant, Maureen Kempf, became employed by respondent, Michigan Bell Telephone Company, in February of 1968. Due to some health problems claimant was given a medical leave of absence from December 21, 1979, until December 25, 1980, during which time she received sickness disability benefits under Michigan Bell's employee benefit plan. On December 26, 1980, claimant's doctor released her to return to work and three days later, on December 29, she was dismissed from her job with termination pay. On the date of her dismissal, December 29, 1980, claimant filed an application for unemployment compensation and preservation of credit weeks. She was denied unemployment compensation because it was determined that she lacked sufficient credit weeks in her base period to establish a benefit year.

In order to establish a benefit year and become eligible for unemployment compensation, one of the requirements is that the claimant have earned

---

* Circuit judge, sitting on the Court of Appeals by assignment.

a certain number of credit weeks in the 52-week period immediately preceding the filing of an application for benefits. MCL 421.46; MSA 17.550. A credit week is a calendar week in which a person is employed and earns equal to or greater than a specified wage. MCL 421.50; MSA 17.554. There is, however, an exception to the requirement that the credit weeks be derived from the period of 52 weeks immediately preceding the filing of the application for benefits. Section 28a of the statute provides for preservation of unused credit weeks during periods of continuous involuntary disability. MCL 421.28a; MSA 17.530(1). Two subsections of § 28a provide for this, but each addresses a different set of circumstances. Subsection (1) allows for preservation of credit weeks where an individual establishes a benefit year and receives unemployment compensation for a while, and subsequently becomes disabled. Upon becoming disabled the individual is no longer able to collect benefits because he is no longer able to fulfill the requirement of having the ability and availability to perform full-time work. MCL 421.28; MSA 17.530. During his period of disability the individual, although he cannot collect unemployment compensation, may preserve his unused credit weeks and carry them over to the period when he becomes once again able to work and collect against them then.

So too subsection 6 of § 28a allows for preservation of credit weeks but under different circumstances. It provides as follows:

"(6) An unemployed individual who has been unable to establish a benefit year solely due to a period of continuous disability may preserve all credit weeks earned by the individual in the 52 week period preceding the individual's first week of unemployment, as

defined in section 48, caused by the disability. However, credit weeks may be preserved if the commission receives a written request and a physician's statement, as described in subsection (1) and (2) within 45 days after the commencement of the unemployment, or if the individual is unable to submit the written statement and request due to a medical inability, within 45 days after the end of that medical inability. The individual's benefit year shall begin the first week the individual was both unemployed and disabled, and the benefit year shall be extended pursuant to subsection (4)." MCL 421.28a(6); MSA 17.530(1)(6).

This subsection addresses a situation where *solely due to a period of continuous disability* a person is unable, at the time of applying for benefits, to establish a benefit year. One clear example of this is when a person loses his job because he becomes disabled, rather than first losing his job, collecting unemployment compensation, and then suffering a disability. Immediately upon losing his job this person cannot establish a benefit year and receive unemployment compensation because he is not able and available for full-time work due to his disability; however, pursuant to this subsection he may preserve his credit weeks earned in the 52-week period preceding his job loss and disability and carry them over and collect against them when his disability is terminated, if he is unemployed at that time.

The issue in the instant case is whether claimant's situation also falls within the purview of subsection 6, thereby entitling her to preserve her credit weeks. As required by subsection 6, claimant was unable to establish a benefit year solely due to a period of continuous disability. The instant factual situation, however, differs from the above example because in the above example the reason that an individual is not able to establish a

benefit year due to his disability is because at the time he applies for benefits his disability prevents him from being able and available for full-time work. In the instant case when claimant applied for benefits her disability had terminated and she was able and available to perform full-time work. However, her disability was still the sole reason she was prevented from establishing a benefit year; her disability had prevented her from earning any credit weeks in the 52-week period immediately preceding her application for benefits.

Respondent argues that claimant's situation does not fall within the purview of subsection 6 and that the language of the provision makes clear the Legislature's intent not to allow individuals in claimant's situation to preserve their credit weeks. More specifically, respondent argues that subsection 6 allows for preservation of credit weeks earned only in the 52-week period immediately preceding "unemployment, as defined in section 48, caused by the disability". Respondent argues that claimant was not unemployed during her disability leave and, therefore, cannot preserve the credit weeks earned in the 52-week period preceding her disability, which is what claimant seeks to do.

Whether or not claimant may be deemed to be unemployed during her disability leave, for purposes of subsection 6, depends upon the definition that is given to the terms "unemployed" and "unemployment" as used in this subsection. If claimant is deemed to be unemployed during her medical leave of absence she will be entitled to preserve the credit weeks earned in the 52-week period immediately preceding her disability and leave of absence which began on December 21, 1979. If, however, she is deemed to be unemployed

only after she lost her job and after her medical leave terminated she would only be entitled to preserve credit weeks earned in the 52-week period immediately preceding her job loss on December 29, 1980. Since claimant did not earn any credit weeks in the 52 weeks immediately prior to December 29, 1980 because she was disabled, she would have no credit weeks to preserve and could not collect unemployment compensation. Therefore, claimant may prevail only if she is deemed to be unemployed during her medical leave.

Section 48 of the statute pertinently provides:

"Sec. 48. An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate:

\* \* \*

"An individual shall not be deemed to be unemployed during any leave of absence from work granted by an employer either at the request of the individual or pursuant to an agreement with his duly authorized bargaining agent, or in accordance with law." MCL 421.48; MSA 17.552.

Section 48 defines an individual who "shall be deemed 'unemployed' ". The term "unemployed" is a term of art and as the statute clearly shows it is not meant to refer exclusively to a person who has suffered a job loss since, for example, it deems one "unemployed" during any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate.

The first paragraph quoted above sets forth a general definition of an individual deemed to be unemployed and pursuant to this provision claim-

ant may be deemed to be unemployed while on medical leave since during that time she performed no services for which remuneration was payable. The last provision which states that an individual shall not be deemed to be unemployed during any leave of absence from work appears, at first blush, to preclude considering claimant as "unemployed" while on disability leave. However, to apply this qualification in interpreting the term "unemployed" as used in § 28a, subsection (6) runs head on into a collision with the apparent intent of this subsection and the entire section providing for preservation of credit weeks.

Section 28a suggests a legislative intent not to penalize an individual who becomes disabled and is unable to work or collect unemployment compensation solely due to his disability and, thus, allows the individual to preserve earned credit weeks and carry them over to provide a basis for compensation when his disability ends and he is unemployed because no work is available at that time. Although strict and consistent application of § 48's provision—that one on a leave of absence is not deemed unemployed—to the entire act lends simplicity and uniformity to the law, this approach infringes on the spirit and purpose of the act and is at odds with what this Court reads to be the intent of the Legislature behind subsection 6 of § 28a. It is well established that the spirit and purpose of a statute prevail over the strict letter thereof. *People v Lawrence,* 54 Mich App 13, 16; 219 NW2d 802 (1974). Further, the cardinal rule of statutory construction is to ascertain and give effect to the legislative intent. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). "All other rules of statutory construction are ancillary to this primary duty, and serve

only as guides to assist the courts in determining legislative intent with a greater degree of certainty." *Kizer v Livingston County Bd of Comm'rs,* 38 Mich App 239, 246; 195 NW2d 884 (1972). Finally, it must be kept in mind that the Michigan Employment Security Act is remedial in nature and is to be liberally construed to provide coverage, and its disqualification provisions are to be narrowly interpreted. *Auten v Unemployment Compensation Comm,* 310 Mich 453; 17 NW2d 249 (1945).

Respondent argues that § 28a(6) was intended to apply only in the situation where an employee is dismissed from his job as a result of a disability, and not when the employee is given a medical leave prior to termination even though while on medical leave the person is unable to work due to the disability and even though the period of disability is the sole factor preventing him from establishing a benefit year. Respondent attaches great significance to the fact that claimant received disability benefits under respondent's employee benefit plan while on leave and contends that this is the reason why the legislative intent was to preclude someone in claimant's situation from preserving his earned credit weeks.

This Court agrees with claimant's position and does not believe that the Legislature intended that disability benefits be allowed to substitute for unemployment compensation. Unemployment compensation is intended to soften the economic burdens of those who find themselves unemployed through no fault of their own by helping them to maintain purchasing power and to limit the social and economic consequences of unemployment. *General Motors Corp v Erves (On Rehearing),* 399 Mich 241; 249 NW2d 41 (1976); MCL 421.2; MSA

17.502. Its purpose is to aid persons while they are able and available to work and who are actively seeking employment but due to circumstances beyond their control cannot obtain employment. MCL 421.28; MSA 17.530. Disability benefits, on the other hand, are designed to aid persons while they are unable to work due to a physical disability. One is not a substitute for the other. It appears that there is no reason why an individual who loses his job due to a disability should be able to preserve his credit weeks if he does not or cannot take a leave of absence but cannot do so if he is able to take a leave of absence. In both cases the period of continuous disability is the sole cause of an individual's inability to establish a benefit year and the purpose of § 28a is to prevent a person from being penalized for his period of disability.

Therefore, having concluded that it was the Legislature's intent to allow a person in claimant's position to come within the purview of § 28a(6), it must be assumed that § 48's provision, which deems a person on a leave of absence not to be unemployed, was not intended to qualify the terms "unemployed" or "unemployment" as used in subsection 6. Rather, it is the conclusion of this Court that subsection 6's reference to § 48 was intended to refer only to § 48's general provision which deems a person "unemployed" with respect to any week during which he performs no services and with respect to which no remuneration is payable to him. According to this provision, claimant was "unemployed" while on disability leave.

This decision is in accord with the commission's most recent opinion on this issue. Although courts cannot delegate the judicial responsibility to interpret legislative intent, courts should consider

agency interpretations. *General Motors Corp v Erves,* 395 Mich 604, 621; 236 NW2d 432 (1975). The commission states in its brief on appeal:

"Since the issuance of its determination and redetermination in this matter, the commission has changed its interpretation of § 48 and 28a(6) to accord with the disposition made by the referee relative to the time that the claimant's unemployment began for the purposes of the application of § 28a(6).

\* \* \*

"The commission accepts claimant's analysis of § 28a(6) on this point and agrees that the claimant herein became unemployed when her leave of absence commenced in December of 1979. This analysis is supported by the clear legislative intent. The Legislature intended that individuals who become disabled should be able to preserve their credit weeks where they became unemployed due to the disability and could not draw unemployment benefits because of that fact, but who upon recovery were unable to return to their work because no work was available at that time. If the Legislature had desired that those individuals who took leaves of absences could not preserve credit weeks, it easily would have said so in clear language. It, however, chose not to do so. There seems to be no reason why an individual who becomes unemployed due to a disability should be able to preserve his credit weeks if he does not or cannot take a leave of absence but cannot do so if he is able to take a leave of absence."

The second issue presented concerns the timeliness of claimant's request for preservation of credit weeks. Section 28a(6) provides in pertinent part:

"\* \* \* However, credit weeks may be preserved if the commission receives a written request and a physician's statement, as described in subsections (1) and (2) *within 45 days after the commencement of the unemployment,* or if the individual is unable to submit the written

statement and request due to a medical inability, within 45 days after the end of that medical inability." MCL 421.28a(6); MSA 17.530(1)(6) (emphasis added).

This provision requires that claimant was to file her request for preservation of credit weeks "within 45 days after the commencement of the unemployment" unless she was medically unable to, which is not the case here. Claimant filed her request within 45 days after she was dismissed from her job. However, as previously discussed "unemployment" under this subsection includes the period when claimant was on medical leave. Therefore, to be consistent with this interpretation of "unemployment" it is argued by both the Michigan Employment Security Commission and Michigan Bell Telephone Company that claimant must have filed her request within 45 days after the commencement of her medical leave and that since she failed to do so she is not entitled to preserve her credit weeks.

Although there is merit to this argument of appellants, it leads to an absurd result in cases such as the instant one. When claimant went on disability leave she expected to return to work when she was well. Until she lost her job she would have no reason to inquire about or take action under the Michigan Employment Security Act and to require her to do so in order to enable her to preserve her credit weeks would be unfair. Therefore, it could not possibly have been the intent of the Legislature to allow claimant to lose her right to preserve credit weeks by failure to make a request before she lost her job. Where an absurd result is reached by a literal construction of the statute, an exception or qualification is presumed to have been intended. *Scholten v Rhoades,* 67 Mich App 736, 745; 242 NW2d 509

(1976). In order to avoid this absurd result, this Court holds that claimant had 45 days after her job loss to file her request for preservation of credit weeks. Since claimant complied with this requirement, she is entitled to have her credit weeks preserved.

Affirmed.