HOUSTON v ALLIED SUPERMARKETS, INC

Docket No. 98180. Submitted January 5, 1988, at Detroit. Decided February 21, 1989.

Claimant, Corrine Houston, last worked for Allied Supermarkets, Inc., on February 25, 1982, when she went on sick leave. On July 1, 1985, her doctor released her for return to work, upon the condition that she not be placed in a stressful situation. Allied indicated that it had no employment available for claimant due to her medical restriction and discharged her from employment on July 9, 1985. On September 3, 1985, she filed an application for unemployment benefits and for preservation of unused credit weeks from February 24, 1982, to July 1, 1985. The Michigan Employment Security Commission denied benefits based on claimant's failure to comply with MCL 421.28a(10); MSA 17.530(1)(10), which requires that a request for preservation of credit weeks due to continuous involuntary disability must be made within three years of the date that the disability begins. Claimant appealed the decision to the Wayne Circuit Court. The circuit court, Charles S. Farmer, J., affirmed. Claimant appealed.

The Court of Appeals *held:*

1. There is a clear showing of legislative intent that the amendment of § 28a by 1983 PA 164, regarding the three-year filing requirement, be given prospective effect from July 24, 1983, the effective date of 1983 PA 164. Subsection 10 of § 28a does not apply retroactively to bar claimant's case.

2. Claimant's claim was, however, filed untimely under the prior version of § 28a(2), which required her to have filed a physician's statement within forty-five days after the commencement of her disability, or within forty-five days after the end of her medical inability to provide such a statement. Her failure to file such a statement within this time constraint outlawed her claim.

Affirmed.

REFERENCES

Am Jur 2d, Statutes §§ 347 *et seq.*; Unemployment Compensation §§ 86 *et seq.*

See the Index to Annotations under Retrospective Operation and Laws; Statutes; Unemployment Compensation.

MacKenzie, P.J., concurred in the result but wrote separately to note her belief that the three-year limitation period for requesting preservation of credit weeks provided in § 28a(10) applies to an individual whose disability commenced prior to the effective date of 1983 PA 164, July 24, 1983. She would affirm because claimant failed to comply with subsection (10).

1. Unemployment Compensation — Disability — Preservation of Credit Weeks.

   The three-year limitation period for requesting preservation of credit weeks provided in the 1983 amendments to the Michigan Employment Security Act does not apply to an individual whose disability commenced prior to July 24, 1983 (1983 PA 164; MCL 421.28a[10]; MSA 17.530[1][10]).

2. Statutes — Retroactivity — Amendment of Statutes.

   Absent a clear showing of contrary legislative intent, statutory amendments related to remedies or modes of procedure which do not create or eliminate vested rights are to be retroactive in effect.

3. Unemployment Compensation — Disability — Preservation of Credit Weeks — Amendment of Statutes — Retroactivity.

   There is a clear showing of legislative intent that the 1983 amendment of § 28a of the Michigan Employment Security Act be given only prospective effect from July 24, 1983 (1983 PA 164; MCL 421.28a, 421.72; MSA 17.530[1], 17.569[22]).

*Lampert, Fried & Levitt, P.C.* (by *Charles E. Lampert*), for claimant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Catherine M. Fleming,* Assistant Attorney General, for the Michigan Employment Security Commission.

Before: MacKenzie, P.J., and Michael J. Kelly and L. P. Borrello,* JJ.

Michael J. Kelly, J. Claimant appeals as of right from a circuit court order affirming a decision of the Michigan Employment Security Com-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mission which denied her application for unemployment benefits. We affirm the circuit court.

Claimant began working for Allied Supermarkets, Inc., in 1952 and last worked on February 25, 1982, when she went on sick leave. On July 1, 1985, claimant's doctor released her for return to work, upon the condition that she not be placed in a stressful situation. Allied indicated that it had no employment available for claimant due to her medical restriction and discharged her from employment on July 9, 1985.

On September 3, 1985, claimant filed an application for unemployment benefits and for preservation of unused credit weeks from February 24, 1982, to July 1, 1985. Benefits were denied based on claimant's failure to comply with MCL 421.28a(10); MSA 17.530(1)(10), which requires that a request for preservation of credit weeks due to continuous involuntary disability must be made within three years of the date that the disability begins. Because her request was made more than three years after the onset of her disability, she had no credit weeks preserved and thus was deemed ineligible for unemployment compensation.

The three-year filing requirement of subsection (10), MCL 421.28a(10); MSA 17.530(1)(10), was one of several general amendments to the Michigan Employment Security Act, MCL 421.1 *et seq.*; MSA 17.501 *et seq.*, included in 1983 PA 164, effective July 24, 1983. Prior to the enactment of 1983 PA 164 and the addition of subsection (10), an unemployed individual could preserve credit weeks due to a continuous involuntary disability by a request filed within forty-five days after the commencement of unemployment without regard to the duration of the disability. 1979 PA 28, § 28a(6). Subsection (10) states:

Notwithstanding any other provision of this section, a request for preservation of credit weeks must be made within 3 years after the date the disability began.

The sole issue in this case is whether the three-year limitation period for requesting preservation of credit weeks provided in subsection (10) applies to an individual whose disability commenced prior to the effective date of 1983 PA 164. Claimant argues that it does not and alleges that, instead, subsection (6), as amended by 1983 PA 164, controls this case. The amended version of subsection (6) provides:

[C]redit weeks may be preserved if the commission receives a written request and a physician's statement, as described in subsections (1) and (2) within 90 days after the commencement of the unemployment, within 90 days after being advised of his or her rights by the commission, or if the individual is unable to submit the written statement and request due to a medical inability, within 90 days after the end of that medical inability. [MCL 421.28a(6); MSA 17.530(1)(6).]

We agree that subsection (10) does not apply retroactively to bar claimant's case, but disagree with her contradictory contention that the amended version of subsection (6) should be applied to make her filing timely.

This Court addressed the issue of the retroactivity of the 1983 PA 164 amendments to MESA in *Harris v Pennsylvania Erection & Construction,* 143 Mich App 790; 372 NW2d 663 (1985), which held that the statutory language provided only for prospective effect from the stated date of effect. Although that opinion decided the retroactivity of amended subsection (6), we find the analysis persuasive regarding subsection (10) as well.

Absent a clear showing of contrary legislative intent, statutes related to remedies or modes of procedure which do not create or eliminate vested rights are to be retroactive in effect. *Kalamazoo City Ed Ass'n v Kalamazoo Public Schools,* 406 Mich 579, 601-603; 281 NW2d 454 (1979). The 1983 amendments to § 28a of MESA relate to procedural rules rather than substantive rights; however, there is a clear showing of legislative intent that these amendments be given only prospective effect from the stated date of effect.

Section 72 of the MESA, MCL 421.72; MSA 17.569(22), delineates the effective dates for the 1983 amendatory language to the MESA, which includes § 28a(6) and (10), the subsections involved in *Harris* and the instant case. Section 72 provides:

> (1) Except as otherwise provided in this section and the 1983 amendatory act which added this section, the 1983 amendatory act which added this section shall take effect upon its date of enactment.
> (2) The amendments made to section 43(g) by the 1983 amendatory act which added this section shall take effect January 1, 1983.
> (3) The amendments made to sections 14, 15, 18, 21, 22a, 24, 32a, 33, 34, and 49 by the 1983 amendatory act which added this section which amendments provide for the extension of certain appeal periods from 20 to 30 days shall take effect October 1, 1983.

Reading this section of the act as a whole, and not piecemeal, in view of the Legislature's indication of retroactivity for parts of the amendments, immediate application for other sections of the amendments, and prospective application for still other sections of the amendments, we are per-

suaded that there is a clear showing of legislative intent against retroactive application for § 28a(10) of MESA. Had the Legislature intended this subsection to be given retroactive effect, it would have said so in the enabling portion. Instead, the Legislature clearly provided that the three-year filing limitation became effective July 24, 1983, and we are bound by that directive.

However, based upon this same reasoning, claimant's filing was untimely under the prior version of MESA § 28a(2), which provided:

> Unused credit weeks shall not be preserved pursuant to this section unless the commission receives a written statement from the individual's physician within 45 days after the commencement of the disability, or if the individual is unable to submit the written statement due to a medical inability, within 45 days after the end of that medical inability the commission receives the written statement from the individual's physician. [1979 PA 28, § 28a(2).]

As previously noted, the present version of § 28a, as amended by 1983 PA 164, does not have retroactive effect, and this includes subsection (2) as well. Under the prior version of § 28a(2), claimant was required to have filed a physician's statement within forty-five days after the commencement of her disability, or within forty-five days after the end of her medical inability to provide such a statement. Claimant's failure to file such a statement within this time constraint outlawed her claim, so it is not necessary to reverse the denial of her claim for unemployment benefits.

Affirmed.

L. P. BORRELLO, J., concurred.

MACKENZIE, P.J. (*concurring in result*). Unlike

the majority, I would hold that the three-year limitation period for requesting preservation of credit weeks provided in MCL 421.28a(10); MSA 17.530(1)(10) applies to an individual whose disability commenced prior to the effective date of 1983 PA 164. In my view, the decision of the circuit court should be affirmed not for the reasons stated by the majority, but because claimant failed to comply with subsection (10).

The basic statutory context of this case was described in *Kempf v Michigan Bell Telephone Co,* 137 Mich App 574, 576-578; 358 NW2d 378 (1984), lv den 424 Mich 857 (1985):

> In order to establish a benefit year and become eligible for unemployment compensation, one of the requirements is that the claimant have earned a certain number of credit weeks in the 52-week period immediately preceding the filing of an application for benefits. MCL 421.46; MSA 17.550. A credit week is a calendar week in which a person is employed and earns equal to or greater than a specified wage. MCL 421.50; MSA 17.554. There is, however, an exception to the requirement that the credit weeks be derived from the period of 52 weeks immediately preceding the filing of the application for benefits. Section 28a of the statute provides for preservation of unused credit weeks during periods of continuous involuntary disability. MCL 421.28a; MSA 17.530(1). Two subsections of § 28a provide for this, but each addresses a different set of circumstances. Subsection (1) allows for preservation of credit weeks where an individual establishes a benefit year and receives unemployment compensation for a while, and subsequently becomes disabled.
>
> * * *
>
> [Subsection (6)] addresses a situation where *solely due to a period of continuous disability* a person is unable, at the time of applying for benefits, to establish a benefit year. One clear

example of this is when a person loses his job because he becomes disabled, rather than first losing his job, collecting unemployment compensation, and then suffering a disability. Immediately upon losing his job this person cannot establish a benefit year and receive unemployment compensation because he is not able and available for full-time work due to his disability; however, pursuant to this subsection he may preserve his credit weeks earned in the 52-week period preceding his job loss and disability and carry them over and collect against them when his disability is terminated, if he is unemployed at that time.

Subsection (10), at issue here, states as follows:

Notwithstanding any other provision of this section, a request for preservation of credit weeks must be made within 3 years after the date the disability began.

I

Claimant first contends that subsection (10) should be applied according to the clear expression of legislative intent found in 1983 PA 164. Highlighting the enabling statute, which states that subsection (10) "shall take effect upon its date of enactment," MCL 421.72(1); MSA 17.569(22)(1), she maintains that the Legislature intended subsection (10) to have prospective application only. In advancing this argument, claimant relies on *Harris v Pennsylvania Erection & Construction,* 143 Mich App 790; 372 NW2d 663 (1985), which declined on the basis of MCL 421.72(1); MSA 17.569(22)(1) to apply retroactively another subsection of 1983 PA 164, § 28a.

I think *Harris* was wrongly decided. In *Kalamazoo City Ed Ass'n v Kalamazoo Public Schools,* 406

Mich 579; 281 NW2d 454 (1979), our Supreme Court held that a procedural amendment to the public employment relations act, 1977 PA 266, which was "effective immediately" was to be applied retroactively. 406 Mich 602-603. In reaching this result the Court observed:

> "Statutes related to remedies or modes of procedure which do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing will, in the absence of language clearly showing a contrary intention, be held to operate retrospectively and apply to all actions accrued, pending or future, there being no vested right to keep a statutory procedural law unchanged and free from amendment." *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963) (syllabus 1), quoted in *Ballog v Knight Newspapers, Inc,* 381 Mich 527, 533-534; 164 NW2d 19 (1969).
>
> \* \* \*
>
> " 'Where a section of a statute is amended, the original ceases to exist, and the section as amended supersedes it and becomes a part of the statute for all intents and purposes as if the amendments had always been there.' 25 RCL, Statutes, § 159, p 907." [*Kalamazoo,* 406 Mich 601.]

I find no meaningful distinction between the words "shall take effect upon its date of enactment" and "effective immediately" for purposes of determining when the Legislature intended a statutory amendment to be applied. Under *Kalamazoo,* then, the question becomes whether subsection (10) is a statute related to modes of procedure which does not take away vested rights. Plaintiff maintains that subsection (10) affects her substantive rights by functioning as a statute of limitations.

A statute of limitations is a procedural bar to a

right of action. *Lothian v Detroit,* 414 Mich 160, 166; 324 NW2d 9 (1982). In *Franks v White Pine Copper Division,* 422 Mich 636, 672; 375 NW2d 715 (1985), the Court noted that a statute affecting a vested substantive right is generally applied prospectively but that a wholly procedural statute is an exception to this general rule of construction. The Court also stated that a procedural statute must not affect an existing right:

> An exception to the general rule is recognized where a statute is remedial or procedural in nature. *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963). Thus, statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intention is manifested. [*Franks,* 422 Mich 672.]

Claimants' rights in this case were not destroyed, enlarged or diminished. When 1983 PA 164 was enacted, she had no vested right to make a valid claim for unemployment benefits.

Finally, even a right that has vested cannot keep statutory procedural law free from amendment. *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480, 485; 124 NW2d 286 (1963). In considering a right under the Workers' Disability Compensation Act the Michigan Supreme Court has stated:

> The question of determining what is a vested right has always been a source of much difficulty to all courts. The right which defendants claim sprang from the kindness and grace of the legislature. It is the general rule that that which the legislature gives, it may take away. A statutory defense, or a statutory right, though a valuable

right, is not a vested right, and the holder thereof may be deprived of it. [*Lahti v Fosterling,* 357 Mich 578, 588-589; 99 NW2d 490 (1959).]

In this case the Legislature changed the procedural requirements of MCL 421.28a; MSA 17.530(1) by adding subsection (10). I find no clear manifestation of legislative intent to apply its requirements prospectively. *Kalamazoo, supra.* Since subsection (10) is procedural, *Harris, supra; Franks, supra,* and because the Michigan Supreme Court applies procedural statutes retroactively, *Kalamazoo, supra,* claimant's nonvested right to unemployment benefits under MESA was properly denied.

II

Claimant alternatively argues that subsection (10) should be applied in a way which is consistent with the remedial nature of MESA. She contends that application of subsection (10) consistent with the spirit and purpose of the act would allow all persons who had a continuous involuntary disability prior to the effective date of the amendment at least three years thereafter to comply with the requirements of subsection (10). This application of subsection (10) would mean that no person who had a continuous involuntary disability prior to July 24, 1983, would need to comply with the three-year filing requirement to preserve credit weeks until July 24, 1986.

Claimant relies on *Kempf, supra,* which states:

Section 28a suggests a legislative intent not to penalize an individual who becomes disabled and is unable to work or collect unemployment compensation solely due to his disability and, thus, allows the individual to preserve earned credit

weeks and carry them over to provide a basis for
compensation when his disability ends and he is
unemployed because no work is available at that
time. . . . . It is well established that the spirit
and purpose of a statute prevail over the strict
letter thereof . . . . "All other rules of statutory
construction are ancillary to this primary duty,
and serve only as guides to assist the courts in
determining legislative intent with a greater de-
gree of certainty." Finally, it must be kept in mind
that the Michigan Employment Security Act is
remedial in nature and is to be liberally construed
to provide coverage, and its disqualification provi-
sions are to be narrowly interpreted. [*Kempf,* 137
Mich App 581-582. Citations omitted.]

The stated purpose of MESA is to remedy the
problem of "[e]conomic insecurity due to unem-
ployment [because it] is a serious menace to the
health, morals, and welfare of the people of the
state." MCL 421.2; MSA 17.502. Section 28a and
its amendments, including the addition of subsec-
tion (10), also state this remedial purpose. See
1979 PA 28; 1983 PA 164.

However, in the absence of language clearly
showing a contrary intent, Michigan courts favor
retroactive application of remedial statutes. See
*Allen v Southeastern Michigan Transportation
Authority,* 132 Mich App 533, 537-538; 349 NW2d
204 (1984), regarding employment of handicapped
persons; *Spencer v Clark Twp,* 142 Mich App 63,
67; 368 NW2d 897 (1985), regarding inclusion of
volunteer ambulance drivers in the workers' com-
pensation act; *Grogan v Manistique Papers, Inc,*
154 Mich App 454, 458; 397 NW2d 825 (1986), lv
den 428 Mich 885 (1987), regarding the right of
reimbursement from third parties under the work-
ers' compensation act; *Hansen-Snyder Co, supra* at
485, regarding the time in which a mechanics' lien
must be filed. But see *Franks,* 422 Mich 672,

regarding setoff provisions in the workers' compensation act.

The Michigan Employment Security Commission distinguishes claimant's reliance on *Kempf* by arguing that this case was decided under facts occurring prior to the 1983 amendment to MCL 421.28a; MSA 17.530(1). It is further argued that 1983 PA 164 was a response to the recurring problem addressed in *Kempf,* where a person is deemed unemployed at the time he or she goes on disability leave and yet has forty-five days from the date of actual termination to preserve credit weeks without regard to the length of the period of disability. *Kempf,* 137 Mich App 584, 586. The *Kempf* panel stated:

> When claimant went on disability leave she expected to return to work when she was well. Until she lost her job she would have no reason to inquire about or take action under the Michigan Employment Security Act and to require her to do so in order to enable her to preserve her credit weeks would be unfair. Therefore, it could not possibly have been the intent of the Legislature to allow claimant to lose her right to preserve credit weeks by failure to make a request before she lost her job. Where an absurd result is reached by a literal construction of the statute, an exception or qualification is presumed to have been intended. [*Kempf,* 137 Mich App 585.]

It is apparent that subsection (10) is a clear legislative enactment which contradicts this statement by the *Kempf* panel. I conclude that the Legislature clearly intended to limit the time period available to preserve unused credit weeks. Subsection (10) limits this time period to three years unless the person applies with MESC before the end of those three years. Since claimant in this case failed to file within three years, unemploy-

ment benefits were properly denied pursuant to subsection (10).

### III

Finally, claimant argues that the trial court's application of subsection (10) leads to an absurd result. Claimant argues that it is absurd and inconsistent with the goals of MESA to require persons who are not yet unemployed to preserve a potential claim for unemployment benefits. She concludes that the only way to avoid a result which is contrary to the policy behind MESA is to read subsection (10) as being applicable only to persons who are *both* involuntarily disabled *and* unemployed.

In *Kempf,* the panel found that it was not the intent of the Legislature to require a claimant to preserve credit weeks prior to losing her job because she had no reason to inquire or take action under MESA. To avoid an absurd result, the claimant was allowed to file for preservation of credit weeks after she was terminated, pursuant to MCL 421.28a(6); MSA 17.530(1)(6). *Kempf,* 137 Mich App 583-584.

However, *Kempf* considered MCL 421.28a; MSA 17.530(1) prior to the amendment put into place by 1983 PA 164. Claimant's contention that subsection (10) should only apply to persons who are both involuntarily disabled and unemployed would give no effect to subsection (10)'s three-year time limitation. Subsection (6), as amended, allows an unemployed person to file to preserve credit weeks within ninety days of becoming unemployed or within ninety days after becoming medically able to work after being unemployed. Interpreting subsection (10) to allow a person to file and preserve credit weeks within three years of when the per-

son was both disabled and unemployed strains the plain language of subsection (10) and creates a conflict with subsection (6). Claimant's interpretation would allow her to file and preserve credit weeks in excess of three years from when her disability began, making subsection (10) meaningless. It is a fundamental rule of construction that every word, sentence and section of a statute should be given effect if possible. *Soap & Detergent Ass'n v Natural Resources Comm,* 415 Mich 728, 738; 330 NW2d 346 (1982). Claimant's argument must be rejected because it would render subsection (10) meaningless.

I conclude that the plain meaning of subsection (10) bars claimant's claim for unemployment benefits pursuant to MESA. The plain language of an unambiguous statute requires no judicial interpretation. *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 642; 344 NW2d 773 (1984). The courts do not function as a "super-legislature" substituting their own wisdom for that of the Legislature, despite the belief that a statute is unfair or unjust. *Grieb v Alpine Valley Ski Area, Inc,* 155 Mich App 484, 487-488; 400 NW2d 653 (1986). Subsection (10) plainly requires that a request for preservation of credit weeks must be made within three years of when the disability began. I would hold that claimant's claim for unemployment benefits was properly denied for her failure to comply with that statute.