**130 Nev., Advance Opinion 32**

IN THE SUPREME COURT OF THE STATE OF NEVADA

RICKY D. ANDERSON,
Appellant,
vs.
THE STATE OF NEVADA
EMPLOYMENT SECURITY DIVISION;
CYNTHIA A. JONES, IN HER
CAPACITY AS ADMINISTRATOR OF
THE EMPLOYMENT SECURITY
DIVISION; AND KATIE JOHNSON, IN
HER CAPACITY AS CHAIRPERSON OF
THE EMPLOYMENT SECURITY
DIVISION BOARD OF REVIEW,
Respondents.

No. 59152

**FILED**

MAY 15 2014



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in an unemployment benefits matter. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

*Reversed and remanded.*

Nevada Legal Services and David A. Olshan and Heather Anderson-Fintak, Las Vegas,
for Appellant.

J. Thomas Susich, Senior Legal Counsel, Employment Security Division, Sparks,
for Respondents.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

NRS 612.344 allows an individual who cannot find work after a period of temporary disability the option of using his work history for the

15 months preceding his disability leave to determine his unemployment compensation instead of, as is the norm, the 15 months preceding his application for unemployment compensation. To qualify for this option, the application must be filed "within 3 years after the initial period of disability begins and not later than the fourth calendar week of unemployment after . . . [t]he end of the period of temporary total disability or temporary partial disability [or the] date the person ceases to receive money for rehabilitative services, whichever occurs later." NRS 612.344(2). On this appeal, we consider what the phrase "within 3 years after the initial period of disability begins" means for the worker with a recurring or degenerative condition. We hold that it refers to the first in the series of potentially available benefits enumerated in NRS 612.344(2)—temporary total disability, temporary partial disability, and/or vocational rehabilitation—for each episode of compensated disability leave. Thus, the alternative-calculation option in NRS 612.344 renews when a temporarily disabled worker recovers and returns to work long enough to reestablish himself in the unemployment compensation system.

I.

A.

Unemployment compensation depends on wages and work history during a claimant's "base period." NRS 612.340; NRS 612.375. In general, "base period" is defined as "the first 4 of the last 5 completed calendar quarters [i.e., 15 months] immediately preceding the first day of a person's benefit year," NRS 612.025, which begins the "first day of the week . . . a valid claim is filed" and continues for the succeeding 52 weeks. NRS 612.030. To qualify for unemployment compensation in any given week, the claimant must have earned wages "within his or her base period" and be "unemployed" but "able to [and] available for work." NRS

Supreme Court
OF
Nevada

(O) 1947A

2

612.375(1). A person is not "unemployed" who is receiving temporary disability or similar benefits as workers' compensation or for vocational rehabilitation:

> No person shall be deemed to be unemployed in any week in which the person:
>
> . . .
>
> (b) Receives benefits for a temporary total disability or a temporary partial disability pursuant to chapters 616A to 616D, inclusive, or 617 of NRS; or
>
> (c) Receives money for rehabilitative services pursuant to chapters 616A to 616D, inclusive, or 617 of NRS.

NRS 612.185(3); *see also* NRS 612.190(3)(a)(2) ("Wages" does not include an employing unit's payments for "[s]ickness or accident disability.").

These statutes coordinate the workers' compensation and unemployment compensation systems so as to avoid duplication of wage-loss benefits. *Cf.* 9 Lex K. Larson, *Larson's Workers' Compensation Law* §§ 157.01-157.02 (2013) (arguing that "all wage loss devices should be part of an overall system" and lamenting "the jerry-built character of American social legislation [that] has resulted at many points in failure to anticipate and provide for appropriate coordination"). But they create an "inequity in the law" for the "person with a recognized attachment to the labor force who is injured on the job and receives workman's compensation . . . and is then released to return to work and [finds] no work is available [yet] is disqualified" from unemployment compensation by his lack of base-period wages. Hearing on S.B. 3 Before the Assembly Comm. on Labor & Mgmt., 66th Leg. (Nev., March 14, 1991) (testimony of Stan Jones, then Director of the Nevada Employment Security Department).

NRS 612.344 addresses this inequity. It creates an alternative base period for the person who was not "unemployed" because

receiving workers' compensation or other benefits enumerated in NRS 612.185(3). Such a person "may elect" to have his unemployment compensation determined with reference to his wages for the 15 months preceding his disability leave instead of the 15 months before applying for unemployment compensation.

> A person who has received:
>
> > (a) Benefits for a temporary total disability or a temporary partial disability pursuant to chapters 616A to 616D, inclusive, or 617 of NRS;
> >
> > (b) Money for rehabilitative services pursuant to chapters 616A to 616D, inclusive, or 617 of NRS; or
> >
> > (c) Compensation pursuant to any similar federal law,
>
> > may elect a base period consisting of the first 4 of the last 5 completed calendar quarters immediately preceding the first day of the calendar week in which the disability began.

NRS 612.344(1). The alternative-calculation option does not extend to periods of sustained disability lasting longer than 3 years:

> An elected base period may be established only if the person files a claim for benefits within 3 years after the initial period of disability begins and not later than the fourth calendar week of unemployment after:
>
> > (a) The end of the period of temporary total disability or temporary partial disability; or
> >
> > (b) The date the person ceases to receive money for rehabilitative services,
>
> > whichever occurs later.

NRS 612.344(2).

We must decide how, if at all, NRS 612.344 applies to a recurring or degenerative medical condition. The Employment Security Division (ESD) reads NRS 612.344 as limited to the 3 years following the

Supreme Court
OF
Nevaoa

(O) 1947A

4

original, disabling injury. So, if a worker injures his knee, receives temporary total disability benefits for 2 years, is rehabilitated, returns to work for 20 years, then reinjures his knee and is off work on temporary disability for 15 months, and cannot find work when he is medically cleared to return, he may not receive unemployment compensation despite his 20-year work history. We reject this interpretation as unreasonable and hold instead that the NRS 612.344 option renews when an injured worker rejoins the work force and works long enough to establish a fresh base period.

### B.

In 2004, appellant Ricky Anderson injured his C-5 and C-6 vertebrae at work. The injury was debilitating, and Anderson received workers' compensation benefits for temporary total disability. Following surgery, Anderson returned to work as a construction company foreman. He held this job for more than two years, from March 2006 until October 2008. Anderson's back problems recurred, and he again received temporary total disability benefits, from November 2008 until June 2010. After more surgery, Anderson was medically released to return to work. But Anderson could not find a job, so he filed for unemployment compensation.

The ESD denied Anderson's claim. It determined that he did not qualify for unemployment compensation, calculated conventionally, because he had not earned wages in the first four of the last five calendar quarters preceding his application. And since Anderson received disability benefits for his back injury starting in July 2004, it held that he could not use NRS 612.344's alternative-calculation option, as the statute's three-year window closed in 2007.

Anderson went through a series of administrative appeals, then petitioned for judicial review, to no avail. This appeal followed.

## II.

### A.

We defer to the ESD's findings of fact but our review is de novo as to questions of law. *Clark Cnty. Sch. Dist. v. Bundley*, 122 Nev. 1440, 1445, 148 P.3d 750, 754 (2006). The ESD argues that the issue in this case is factual—did Anderson's 2004 injury to his C-5 and C-6 vertebrae underlie his temporary total disability in 2004-2006 and 2008-2010? But Anderson accepts (and so do we) the ESD's finding that his 2004 injury led to both disability leaves. Anderson's point is that by working full-time from 2006 to 2008, he restored his eligibility to elect the optional base period under NRS 612.344. This is a legal question calling for statutory interpretation, not fact-finding, making our review de novo.

### B.

To the ESD, NRS 612.344 has an obvious plain meaning: If the same original injury leads to two extended periods of temporary disability, the NRS 612.344(1) option only applies to the first. The ESD culls this meaning from NRS 612.344(2)'s use of the word "initial" in providing, "An elected base period may be established only if the person files a claim for benefits within 3 years after the *initial* period of disability begins . . . ." (Emphasis added.) "If the Legislature meant that one could elect an alternative base period within three years after any work stoppage resulting from an earlier injury," the ESD argues, "it would have stated that. Instead, the Legislature specifically limits eligibility for election of the alternative base period to three (3) years from the date that the INITIAL disability begins." (Capitalization ESD's.) The ESD maintains that we must read "initial" out of the statute for Anderson to win.

But the ESD reads "period of" out of the statute. It has "initial" modifying "disability," then equates "disability" with "injury." This explains the ESD's position that the dispute here is factual: Anderson's "initial" injury occurred in 2004, so according to the ESD, his optional NRS 612.344 election expired 3 years later for anything causally connected to that "initial" injury. But if two distinct on-the-job injuries had befallen Anderson—say a skull fracture from a fall, then two years later, third-degree burns from a warehouse fire—and they led to the same disability leave/work history that his back injury did, apparently the ESD would permit him to use NRS 612.344 because the "disabilit[ies]"—read injuries—are distinct.

The logic of the ESD's position is hard to follow. If its goal is to sustain its denial of benefits to Anderson, it would be better off to accept that "initial" modifies "period of disability" and then treat the NRS 612.344 option as a one-time opportunity. This would mean that a worker has only 3 years after his first or "initial" period of disability to use NRS 612.344; after that, the option would expire, regardless of what disabilities followed or how long he worked between them. But consistent with the rule that our "unemployment statutes should be liberally construed in order to advance the protective purposes of Nevada's unemployment compensation system of providing temporary assistance and economic security to individuals who become involuntarily unemployed," *State Dep't of Emp't, Training & Rehab. v. Reliable Health Care Servs. of S. Nev., Inc.*, 115 Nev. 253, 257, 983 P.2d 414, 417 (1999), the ESD does not go that far. It argues only that NRS 612.344 is off-limits where, as in Anderson's case, the same original injury leads to multiple periods of disability leave.

## C.

"[P]eriod of disability" is not defined in Chapter 612 or elsewhere in the NRS. However, it is used in Nevada's workers' compensation statutes, NRS Chapter 616C, to distinguish between "temporary total disability" and "temporary partial disability," on the one hand, and "permanent partial disability," on the other hand. NRS 616C.405 (stating that a person may not receive permanent partial disability compensation "during [a] period of temporary total disability" and that a person may not receive a permanent partial disability award "during [a] period of temporary partial disability"); *see* NRS 616C.400 (equating duration of incapacity to "period"); NRS 616C.475(1) & (3) (explaining how benefits "for the period of temporary total disability" are calculated and what their start date is when "a claim for [a] period of temporary total disability is allowed"); NRS 616C.475(7) (requiring a physician's or chiropractor's certification of disability to "[i]nclude the period of disability"); NRS 616C.500(1) (stating the formula for calculating temporary partial disability benefits and providing that they may only last "for a period not to exceed 24 months during the period of disability"). *Cf. DiPasquale v. Bd. of Review*, 669 A.2d 275, 278 (N.J. Super. Ct. App. Div. 1996) (it is appropriate to construe the workers' compensation and unemployment compensation statutes harmoniously since they are "inter-related statutes designed to effect an 'employee welfare plan for alleviation of wage loss'" (quoting *Seatrain Lines, Inc. v. Medina*, 188 A.2d 169, 172 (N.J. 1963))).

NRS 612.344 uses "period of disability" much as NRS Chapter 616C uses the phrase. Thus, NRS 612.344(1) describes the context for its base-period option as a worker's receipt of benefits for "a temporary total disability or a temporary partial disability," "[m]oney for rehabilitative

services," or "[c]ompensation pursuant to any similar federal law." After requiring the unemployment benefits claim to be filed "within 3 years after the initial period of disability begins," NRS 612.344(2) then specifies that, to qualify, the claim must also be filed *not later than* the fourth calendar week of unemployment after: (a) The end of the *period of temporary total disability or temporary partial disability*; or (b) The date the person ceases to receive money for rehabilitative services, *whichever occurs later.*" (Emphasis added.) Thus, "period of disability" refers to the duration of a type of disability benefit, not injury. The statute's use of "whichever occurs later" confirms that NRS 612.344(2) is addressing a series of potential "period of disability" types, with "initial" modifying the first in the sequence. While this does not answer whether a worker can have more than one "initial period of disability" over the course of his career, it makes untenable the ESD's position that he may, so long as his periods of disability result from discrete injuries.

### D.

Accepting that "period of disability" refers not to injury but to time off work receiving a particular type of disability benefit, the question remains whether NRS 612.344(2) permits or prohibits a worker from having more than one "initial period of disability" over the course of his career. On this point, the statute's text can reasonably be read either way. "Initial" may mean first or original, in which event the worker would have only one initial period of disability, or it may mean the first in a series, in which the worker could have more than one such initial period. Because the statute is ambiguous, we may consult its legislative history for clues to its meaning. *See State v. Lucero*, 127 Nev. __, __, 249 P.3d 1226, 1228 (2011); *see also Las Vegas Sands Corp. v. Eighth Judicial Dist. Court*, 130 Nev. __, __, 319 P.3d 618, 620 (2014) (in interpreting a statute whose

SUPREME COURT
OF
NEVADA

(O) 1947A

text is unclear, the court favors the interpretation that leads to a reasonable result).

The Legislature added NRS 612.344 to NRS Chapter 612 in 1991. Originally, NRS 612.344 only applied to benefits for temporary total disability or their federal counterpart. The statute referred to "*the* period of disability" twice in one sentence, but it did not mention "*initial* period of disability" at all:

> A person who has received compensation for a temporary total disability pursuant to chapter 616 or 617 of NRS or any similar federal law may elect a base period consisting of the first 4 of the last 5 completed calendar quarters immediately preceding the first day of the calendar week in which the disability began. *An elected base period may be established only if the person files a claim for benefits not later than the fourth calendar week of unemployment after the end of the period of disability and files the claim within 3 years after the period of disability begins.*

1991 Nev. Stat., ch. 60, § 1, at 120 (emphasis added). This text concerned the length of time the worker received temporary disability benefits before applying for unemployment compensation. If his temporary total disability period lasted longer than 3 years, then he could not use NRS 612.344 to resurrect a 3+ year old work history as a basis for unemployment compensation. But nothing suggested that, if the worker recovered and returned to work, he could not thereafter use NRS 612.344, assuming he established an adequate work history, his new temporary total disability period lasted less than 3 years, and he timely applied for unemployment compensation.

NRS 612.344 was amended to its current, ambiguous form in 1993. The changes to the 1991 version of NRS 612.344 are shown in italics (additions) and bolded brackets (deletions) below:

SUPREME COURT
OF
NEVADA

(O) 1947A

10

1. A person who has received [compensation]:

*(a) Benefits* for a temporary total disability *or a temporary partial disability* pursuant to chapter 616 or 617 of NRS [or];

*(b) Money for rehabilitative services pursuant to chapter 616 or 617 of NRS; or*

*(c) Compensation pursuant to* any similar federal law,

may elect a base period consisting of the first 4 of the last 5 completed calendar quarters immediately preceding the first day of the calendar week in which [the] *his* disability began.

2. An elected base period may be established only if the person files a claim for benefits *within 3 years after the initial period of disability begins and* not later than the fourth calendar week of unemployment after [the]:

*(a) The* end of the period of *temporary total* disability [and files the claim within 3 years after the period of disability begins.] *or temporary partial disability; or*

*(b) The date he ceases to receive money for rehabilitative services,*

*whichever occurs later.*

1993 Nev. Stat., ch. 248, § 3, at 536.

The object of the 1993 amendments to NRS 612.344 was to *expand* it to reach temporary partial disability and rehabilitative services in addition to temporary total disability, not to *restrict* its use to the 3-year period following a worker's first disabling injury. The ESD expressly said this was the reason for the amendments in the prepared testimony it presented to the 1993 Nevada Legislature:

[The object is to] provide the potential for a second base period for a person on rehabilitation or temporary partial disability [by] allow[ing] them

11

to use wages earned immediately prior to the disabling injury to establish an unemployment insurance claim. . . .

> *The [ESD] supports passage of this bill because it provides equity for injured workers who are receiving assistance from SIIS [workers' compensation] in the form of rehabilitation services or temporary partial disability benefits, but do not have the option of an alternate base period that is presently available to individuals on temporary total disability.*

In summary, this bill makes available to an injured individual an alternate base period to establish benefits if it is to the claimant's advantage. This is beneficial to the injured worker.

Hearing on A.B. 436, Before the Assembly Comm. on Labor & Mgmt., 67th Leg. (Nev., April 23, 1993) (emphasis added) (testimony of ESD Assistant Chief of Benefits, Ross Whitacre).

The 1993 Legislature amended both NRS 612.185, *reprinted supra* § I.A, and NRS 612.344(2), at the same time and as part of the same bill. The 1993 amendments to NRS 612.185 further confirm our understanding of the purpose of the 1993 amendments to NRS 612.344(2). In its pre-1993 form, NRS 612.185(3) said only that a worker was not "unemployed" for unemployment compensation purposes if he was receiving "benefits for a temporary total disability." 1985 Nev. Stat., ch. 263, § 1, at 802. The 1993 amendment to NRS 612.185 expanded the definition of not "unemployed" to reach the worker receiving benefits for either temporary total or temporary partial disability or money for rehabilitative services. 1993 Nev. Stat., ch. 248, § 1, at 533. This expansion of the ranks of the not-"unemployed" to include those on temporary partial disability or those receiving money for rehabilitative

services required, in fairness, a correlative expansion of the NRS 612.344(2) option, so it would be available to the new categories of workers being added to the definition of not-"unemployed" in NRS 612.185. But nothing in these amendments suggests a purpose of limiting the alternative-calculation option NRS 612.344(2) affords to the first injury a worker may sustain over the course of his career.

### E.

Public policy and common sense also support our reading of NRS 612.344(2). Unemployment compensation is designed "to soften the economic burdens of those who find themselves unemployed through no fault of their own by helping them to maintain purchasing power and to limit the social and economic consequences of unemployment." *Kempf v. Mich. Bell Tel. Co.*, 358 N.W.2d 378, 382 (Mich. Ct. App. 1984). Workers' compensation, by contrast, is "designed to aid persons while they are unable to work due to a physical disability. *One is not a substitute for the other.*" *Id.* (emphasis added). As the Colorado Court of Appeals noted in construing its analog to NRS 612.344(2), "the statutory scheme has as its purpose to harmonize the payment of benefits which an injured worker may be entitled to receive under each act." *Fluke v. Indus. Claim Appeals Office*, 799 P.2d 468, 470 (Colo. Ct. App. 1990).

We recognize that "the legislature is the parent of unemployment benefits" and that "[t]hese benefits are not inherent rights of Nevada citizens." *Kame v. Emp't Sec. Dep't*, 105 Nev. 22, 26, 769 P.2d 66, 68 (1989). It makes sense to establish a limit on how far back in time a claimant may reach to establish an alternate base period, since the more remote the period is, the greater the record-keeping and other administrative challenges. But it is difficult to fathom why a worker with

a medical condition that recurs should be treated differently from one who is accident-prone and suffers multiple distinct injuries, especially since the law, presumably, encourages individuals to return to gainful employment if they are able. As the ESD conceded at oral argument, it is not in the business of evaluating the etiology of medical disorders. Its concern is the proximity of the base period to the application for unemployment compensation. So long as a disabled claimant's work history establishes an alternate base period without having to go back more than 3 years to start the period, NRS 612.344 applies.

For these reasons, we reverse and remand for further proceedings consistent with this opinion.

_____, J.
Pickering

We concur:

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta